Siegman v. Maloney.

RICHARD SIEGMAN

*v.*

MARTIN MALONEY, ISAAC L. RICE, WILLIAM W. GIBBS, PHILIP
LEHMAN, GUSTAV E. KISSEL, NORMAN HENDERSON, ED-
WARD TUSK, FREDERICK VIEWEG and the ELECTRIC VEHI-
CLE COMPANY.

RICHARD SIEGMAN

*v.*

GEORGE H. DAY, ISAAC L. RICE, THOMAS J. REGAN, DANIEL
H. SHEA, ROBERT A. McA. LLOYD, JOHN JACOB ASTOR,
JOSEPH M. HILL, ARTHUR PHILIPS and the ELECTRIC
VEHICLE COMPANY.

AARON APPLETON and W. M. BENNETT

*v.*

RANDOLPH RODMAN, GRANT B. SCHLEY and the AMERICAN
MALTING COMPANY.

[Submitted April 1st, 1902.   Decided April 25th, 1902.
Filed September 11th, 1902.]

1. Under *P. L. of 1896 ch. 185 § 30*, providing that no corporation shall
make dividends except from the surplus or net profits from the business,
or pay to the stockholders any part of the capital stock except in accord-
ance therewith, and that the directors violating such provision shall be
jointly and severally liable to the corporation and its creditors, in the
event of its dissolution or insolvency, to the full amount of the dividend
made, with interest from the time the liability accrued, the stockholders
of a corporation to whom the directors have paid dividends out of the
capital stock cannot maintain a suit in behalf of the company to compel

Siegman *v.* Maloney.

the directors to repay the amount of such dividends to the corporation, without regard to the company's financial condition, ·or whether the money is needed to pay creditors, since such section is limited in its operation to cases where the assets of the corporation are insufficient to pay its creditors.

2. The statute, if construed as authorizing stockholders to maintain a suit to compel directors to repay to the corporation the amount of dividends paid out of the capital stock, without regard to the company's financial condition, is penal, and a court of equity will not entertain a suit for its enforcement, though the stockholders may have no remedy in any other court.

3. Where a stockholder, being unable to induce the directors of a corporation whose stock he holds to bring an action at law, applies to a court of equity to aid him, he must show, to excite the favorable action of the court, to its satisfaction, that the result of the action will be to promote justice, and will not produce inequitable results.

4. In an action by stockholders under *P. L. of 1896 ch. 185 § 30*, making directors of a company jointly and severally liable to the corporation and its creditors for dividends paid except' from the surplus or net profits, to compel them to repay to the company the amount of dividends' paid out of the capital stock, it is immaterial that the complainants were induced by the payment of such dividends to purchase their stock, as an action for the deceit, if any, would lie against the director or directors who deluded the complainants.

5. Under *P. L. of 1896 ch. 185 § 30*, making directors of a company jointly liable to the corporation and its creditors for dividends paid except from the surplus or net profits, in a suit in behalf of the company by stockholders who have received dividends out of the capital stock to compel the directors to repay the amount of such dividends to the corporation, it is not material that such stockholders have not paid back the dividends they have received, or that the stock may have been transferred after the payment of the dividends, and the then holders may not have received any of the illegal payments.

---

On demurrers to bills.   Three causes argued together.

The first two suits are brought by a stockholder in the Electric Vehicle Company, in behalf of himself and all other stockholders, against successive sets of directors of that company; and the third suit is brought by a stockholder in the American Malting Company, in behalf of himself and all other stockholders, against the directors thereof.

The cause of action set out in the bills is the declaring and paying of dividends out of capital, whereby a liability arose

under the thirtieth section of the Corporation act of 1896. *P. L. of 1896 p. 286.*

The allegation in the first two bills is that the Electric Vehicle Company was organized in 1897, and that its articles of association provided for two kinds of stock—common and preferred—of which there has been issued $5,000,000 of preferred stock and $7,000,000 of common stock; and that at various times between April 1st, 1899, and April 15th, 1900, dividends to the amount of $704,800 were declared and paid to the stockholders out of the capital stock, and that there have been no net earnings.

That early in the year 1899 the company purchased a plant for the manufacture of electric vehicle appliances in Chicago, and invested a large sum of money—about $1,000,000—therein, and that the company operated the same and expended large sums of money in it—over $1,000,000—and afterwards sold it, and suffered a great loss; so that in April, 1901, the company was without funds with which to carry on its business, and, in order to prevent suspension of business, the company was compelled to borrow the sum of $1,500,000 to continue business, and issued bonds to that amount, and mortgaged its property to secure them.

The further allegation is that the complainant did not ask the company to bring suit, because the majority of the directors were the very persons who had declared the illegal dividends, so that it would have been idle to do so.

The complainant admits having received all the dividends which have been declared on his shares of stock; that he accepted them in full belief that the statements and representations of the directors of the company were true, namely, that the said several dividends were declared out of the profits of the business; but that he had ascertained, upon inquiry, that such was not true, having been driven to make his inquiries by the *great decline in the price of the stock* after payment of dividends were stopped.

The prayer is for discovery of the facts with regard to the profits and loss of the company, and that the actual amount of the unlawful dividends may be ascertained and the defendants decreed to pay the amount to the company.

The bill in the third suit, namely, *Appleton* v. *Rodman et al.*, states that the complainant is the owner of stock in the American Malting Company; that the articles of incorporation of that company authorized two kinds of stock—preferred and common—$15,000,000 of each, of which over $26,000,000 have been issued, and that the directors of the company, between the time of its incorporation in the year 1897 and the 1st of January, 1900, declared four quarterly dividends of one and three-quarters per cent. each on the preferred stock of the company, and that the same was paid to the holders of the stock, although the directors then well knew that the surplus or net profits of the company, on the day the same were declared, did not amount to that sum; and at the same time they declared a large dividend on the common stock of the company; that the total dividends amounted to $1,855,350, and that the net earnings did not exceed $700,000, being a payment of dividends over earnings of $1,155,350; and that, by reason of such unlawful payments of dividends, and of general mismanagement, the capital of the company, on August 31st, 1900, was found to be impaired to the extent of $1,395,688; and alleges that the directors (naming them) are liable to make that good; that complainant has not requested the company to bring a suit, because the persons who declared the unlawful dividends still constitute a majority of the board of directors. The prayer is that the directors who declared and paid the dividends may be decreed to repay the amount to the corporation.

There is no allegation in either of the bills that the corporations had stopped business, or were unable to pay their debts, or that the business, at the time of filing the bill, was not profitable.

*Mr. James E. Howell,* for the complainant Siegman.

*Mr. John A. Carver, Mr. Victor K. McElheny, Jr.* (of the New York bar), and *Mr. J. Herbert Potts* and *Mr. Charles L. Carrick,* for the complainant Appleton.

*Mr. William M. Bennett* (of the New York bar), complainant, *pro se.*

Mr. *Richard V. Lindabury,* for the defendants in *Electric Vehicle Case.*

Mr. *Thomas Thacher* and Mr. *Alfred B. Thacher* (of the New York bar), for the defendants Schley and Rodman.

Mr. *Charles L. Corbin,* for the defendants Maloney, Schley and Rodman.

Mr. *John M. Dickinson,* for the defendant Kissel.

PITNEY, V. C.

The statute upon which the complainants base their right, acting in behalf of the corporation, to compel the directors to repay the dividends which have been declared and paid to the stockholders, is as follows:

"30. No corporation shall make dividends, except from the surplus or net profits arising from its business, nor divide, withdraw or in any way pay to the stockholders, or any of them, any part of its capital stock, or reduce its capital stock, except according to this act, and in case of any violation of the provisions of this section, the directors under whose administration the same may happen shall be jointly and severally liable, at any time within six years after paying such dividends, to the corporation and to its creditors, in the event of its dissolution or insolvency, to the full amount of the dividend made or capital stock so divided, withdrawn, paid out or reduced, with interest on the same from the time such liability accrued; provided, that any director who may have been absent when the same was done, or who may have dissented from the act or resolution by which the same was done, may exonerate himself from such liability by causing his dissent to be entered at large on the minutes of the directors at the time the same was done or forthwith after he shall have notice of the same, and by causing a true copy of said dissent to be published, within two weeks after the same shall have been so entered, in a newspaper published in the county where the corporation has its principal office."

The contention of the complainants is that the act creates a liability on the part of the directors to repay to the corporation all dividends declared and paid not out of net earnings, without regard to the financial condition of the company, and without regard to the question whether the money is needed to pay cred-

itors, and without regard to the question whether any actual injury has resulted to the company from such payment. In short, they contend that such improper and illegal payments of dividends are to be treated precisely as if paid without value to strangers.

The position of the demurrants is that the liability to repay the dividends arises only in case such payment is needed to satisfy creditors.

The demurrants further argue that the contention of the complainants would result in the enforcement of a penalty, to which a court of equity does not generally lend its aid; and that the enforcement of the penalty would result in increasing the assets of the company for the benefit of the stockholders, who already have in their pockets the unearned dividends, which, it is argued, is manifestly unjust.

Against this last view the complainants argue that the construction they put on the statute does not result, properly speaking, in enforcing a penalty. They contend that the reduction of the capital stock of the corporation is unlawful, without regard to the prohibition contained in the statute; that it is a breach of the contract between the stockholders; that it tends to cripple the company and to embarrass it in its operations, and is a means of diminishing and dividing the capital among the stockholders in a mode not provided for in the statute; and that such diminution of the capital stock may operate injuriously to the general interests of the stockholders, to an extent not easily capable of judicial estimate and determination; and that the sum fixed by the thirtieth section to be repaid by the directors is in the nature of liquidated damages fixed by the statute to cover uncertain damages, and so clearly distinguishable from a penalty.

The demurrants support their line of argument as to the true construction of the act as follows: They trace the section back to a statute of New York entitled "An act to prevent fraudulent bankruptcies by incorporated companies, to facilitate proceedings against them, and for other purposes," found in *Laws of N. Y. p. 448*. The title of this statute, they argue, shows clearly that this section was to be enforced for the benefit of creditors in a case of insolvency. This section was introduced into our laws

in 1846, in the "Act concerning corporations." *Rev. Stat. 1846 p. 138 tit. 5 ch. 4 § 7.* It was readopted in the *Rev. of 1877 p. 178 § 7.*

The language in the revision of 1846 was this:

"Shall, in their individual and private capacities, jointly and severally, be liable to the said corporation, and to the creditors thereof, in the event of its dissolution or insolvency, to the full amount of the capital stock so divided," &c.

Note the comma after "corporation."

The same language and punctuation occur in the revision of 1877.

In the revision of 1896 the comma after the word "corporation" is dropped, and it reads as follows:

"Severally liable to the corporation and to its creditors, in the event of its dissolution or insolvency."

The demurrants argue, from the punctuation itself, that the words "in case of dissolution or insolvency" relate back to the word "corporation," and annex the condition of insolvency to the right of the corporation to recover; and in support of the propriety of resorting to punctuation they refer to the very recent case of *Howard Savings Institution* v. *Newark, 34 Vr. 547* (at *p. 551*). There the court did rely, in part, on the dropping of a comma out of an act upon its repassage—aided by the reasonableness of the construction which resulted from that punctuation. That argument is repeated here; and it is contended that the construction to which it leads is reasonable; that the holding that the corporation might sue and recover back the money paid to the stockholders, when such recovery would inure directly to the benefit of the stockholders and was not necessary in order to pay debts, is so unreasonable and inequitable as to turn the scale in favor of the construction indicated by the punctuation found in the later act.

I think this argument has great force. I am unable to perceive how it is possible, under the facts stated in these bills, to hold that there is, in equity, any distinction, for present purposes, between a company and its stockholders. The payment into the treasury of the company of the amount of these illegal

dividends will inure directly to the benefit of the stockholders,. who are the very persons who have received the money. This, it seems to me, would be highly inequitable and unjust.

If the money improperly paid out to the stockholders is needed to pay creditors, it should, in justice, be recovered from those stockholders; but as they are generally numerous and possibly not pecuniarily responsible, and may have received the money innocently, the statute properly fixed a liability for its repay-- ment upon the directors, who are fewer in number and primarily responsible for the improper payment. And they cannot complain of being made so responsible, for the reason that they should have been more careful in their conduct; and, as against the creditors, the money is as thoroughly dissipated and wasted and put beyond the reach of creditors when it is paid to stockholders as if dissipated by any other method.

But as between the company, where there are no creditors,. and the stockholders who have received the money, and the directors who ordered it paid, the equity is entirely different. It is true that in law, and for purposes of making contracts, and suing and being sued, the stockholders and corporation are separate entities, but when it comes to subtractions from and accretions to the funds of the company there is no distinction, because the stockholders own the company and are entitled to share in its assets. Its gain is their gain, and its loss is their loss.

This consideration leads me to incline to adopt demurrants' construction.

·But, say the complainants, the construction put upon the act by the demurrants reads out of it, so to speak, the word "corporation," since the act says the directors shall be "liable to the corporation and to its creditors." This argument assumes that a corporation can never, in practice, be at liberty to bring an action and collect a debt, or enforce a claim, after it has found itself in a situation to be unable to pay its debts—found itself to be, in other words, actually insolvent, although not judicially declared insolvent. I cannot accept that result. Corporations may, unless interfered with, proceed and wind up their own affairs. Creditors may have such confidence in the

officers of the corporation as to be willing to permit them to perform those functions, and may refrain from setting in motion the machinery of this court to have it declared insolvent; and it may well be that a case may arise where a corporation, acting in the interest of its creditors, and of its creditors alone, would have a right to bring an action against its directors to recover back dividends by them unlawfully declared and paid; but in so doing the amount of the recovery would, on the theory of the demurrants, be limited to the amount necessary to pay its debts after its other assets were exhausted; and such was the expression of Lord-Justice Cotton, in *Flitcroft's Case, L. R. 21 Ch. Div. 519* (at *p. 536*), one of the cases relied upon by the complainants. He there says:

"The argument that the money has in fact been received by the company, and that the company cannot get it back, is ingenious, but unsound. The corporation is not a mere aggregate of shareholders. *If the corporation were suing for the purpose of paying over again to the shareholders what the shareholders had already received, the court would not allow it. But that is not the case here. The company is insolvent, and there is no objection to allowing it to get back its funds for the purpose of paying debts.* The case of the liquidator is stronger, for, in some respects, he, as a *quasi* trustee for creditors as well as shareholders, stands in a different position from the company. *But I rely on this, that the money was not paid to the corporation, but was paid improperly to individuals, and the corporation can sue the directors to get it back, that it may be applied in payment of the debts of the corporation. I do not see how to make any distinction between what the directors retained and what they paid to other shareholders.*"

It is said by the complainant that this court has nothing to do with the question of the justice and equity of the action; that the complainant is compelled to come into equity and to ask this court to enforce what is strictly a legal right; that it is quite idle for the complainant to ask the company itself to bring the action when its conduct is controlled by the very men who are to be sued, and when, even if it should consent to bring an action at law, the suit would be conducted, in effect, by the

Siegman *v.* Maloney.

defendants against whom the action is brought, and hence, this court has no right to inquire whether it would be equitable and just to aid in bringing such a suit.

I cannot accede to that proposition. I am of the opinion that when a stockholder, being unable to induce the directors of a corporation, whose stock he holds, to bring an action at law, comes into a court of equity to aid him, he must, in order to excite the favorable action of that court, show, to its satisfaction, that the result of the action will be to promote justice, and will not produce any inequitable results. The helpless circumstances in which the complainants in these causes find themselves do not warrant them to ask this court to prostitute its process to promote an unjust and inequitable end.

The demurrants rely upon the further circumstance that, although this act, or one like it, is found in a great number of the states of the union, and the liability which it declares is substantially, on the complainants' own theory, part of the common law of the land, and enforced as such in England, no well-considered precedent can be found for an action brought by a company while solvent and able to pay its debts to recover back dividends declared and paid out of the capital.

Looking at the adjudged cases, we find only one in this state in which the section has come under judicial consideration. *Williams* v. *Boice, 11 Stew. Eq. 364.* That was an action by the receiver of an insolvent bank to recover from the stockholders dividends which had been paid to them out of the capital; and the point made was that, under this section of the Corporation act, the remedy of the receiver was, in the first instance, against the directors who made the improper dividends. In answer to that Chancellor Runyon says (at *p. 369*) : "The statutory liability thus created, however, does not exonerate the stockholders who have received the money from liability to repay it for the benefit of the creditors. The statute does not transfer the liability from the stockholders to the directors, but it creates a liability on the part of the latter in favor of the corporation or the creditors in certain events. *The section is penal, and so far as it gives a remedy to the corporation, it is for the benefit of stockholders as well as creditors. So far as the latter are con-*

Siegman *v.* Maloney.

*cerned, it provides what may be an easier and more economical mode of recovery than suit against the stockholders.* It might be very difficult to reach the stockholders (there might be a very large number of them, and they might be greatly scattered, or might be all non-residents), while it might not be difficult, or not so difficult, to reach the directors. The stockholder who has received part of the capital by way of dividend, without legislative authority, has no right to it as against the creditors of the corporation, and no wrong is done him if he be compelled to repay it when it is required to pay the debts of the corporation. He or those from or under whom he derives his title to his stock placed that money in the treasury of the corporation to answer for its debts if necessary, and it was devoted to that object so long as it might be required for the purpose. If he withdraws or receives it back again, except where the amount of the stock is reduced according to law, it will, in his hands, be subject to that trust—the trust for the payment of the debts of the corporation if needed for the purpose." This language, so far as it is not necessary to the decision of the question in hand, is mere *dictum,* but it shows that the learned chancellor considered the enforcement of the liability beyond what was necessary to satisfy creditors as purely penal.

Looking at the English cases, the liability of directors there is under the common law, and by virtue of a statute different from ours. The one hundred and sixty-fifth section of the Companies' act of 1862 is as follows:

"Where, in the course of the winding up of any company under this act, it appears that any past or present director, manager, official or other liquidator, or any officer of such company has misapplied or retained in his own hands or become liable or accountable for any moneys of the company or been guilty of any misfeasance or breach of trust in relation to the company, the court may, on the application of any liquidator or of any creditor or contributory of the company, notwithstanding that the offence is one for which the offender is criminally liable, examine into the conduct of such director, manager or other officer and compel him to repay any moneys so misapplied or retained or for which he has become liable or accountable, together with interest after such rate as the court thinks just; or to contribute such sums of money to the assets of the company by way of compensation in respect of such misapplication, retainer, misfeasance or breach of trust as the court thinks best."

Siegman *v.* Maloney.

A leading case is *Evans* v. *Coventry, 8 De G. M. & G. 835 (1856),* and was the case of a sort of mutual life assurance company. The bill was filed on behalf of the insured, whose position combined that of creditor and stockholder, the company having declared dividends among all the assured. The suit was against the directors to recover dividends improperly declared after the company had become hopelessly insolvent. The case was heard before Vice-Chancellor Kindersley, an abstract of whose judgment is found on *p. 840,* and the question was whether all the shareholders who had received a dividend should not be brought before the court. Vice-Chancellor Kindersley said: "That although the shareholders ought to have been before the court, yet that, having regard to the great difficulty of finding them, and to the fact that the defendants were unable to give any effectual assistance in finding them, a decree ought to be made against those who were before the court, *to the extent as against each of his unpaid share of the capital;* that the purchases of shares with the funds of the company were breaches of duty, and that the directors must replace the moneys thus expended." On appeal the decree was varied (see *p. 845*), and a clause was inserted that the decree against the directors would be "without prejudice to any right which they, or any of them, may have against the other shareholders of the company or society who may have received dividends"—showing a disposition to reach the very persons who received the money.

The next is *Rance's Case, 6 Ch. App. 104 (1870)*. That was a winding-up case, and was an action by a liquidator against a director to compel him to return moneys which he had received; and the director was directed simply to pay back the dividends which he had himself received, and went no further.

The next case is *Holmes* v. *Newcastle-upon-Tyne Freehold Abattoir Co., 1 Ch. Div. 682 (1876)*. There ten persons, all butchers, of whom the plaintiff was one, formed an association to buy land to be used for slaughtering cattle, each putting in an equal amount of money. Some of the land not being needed, nine of the directors sold £1,000 worth, and divided the amount among the ten shareholders. The plaintiff declined to receive

his share, and afterwards sued the other nine shareholders, and prayed that they might be decreed to repay to the company the amount each of them had received, for the purpose of keeping up its credit and ability to do business. Vice-Chancellor Hall decreed the return of the money on the ground that the public trusted the company on the strength of the amount of its published capital. He made this remark (on *p. 688*) : "The only way, therefore, in which the public can be protected with reference to this transaction is by having that money restored; and it was, I consider, the duty of the plaintiff, holding the position of a shareholder in this company, to see, on behalf of the creditors, present and future, that the money was brought back."

*In re National Funds Assurance Co., 10 Ch. Div. 118 (1878),* was an action by a liquidator against directors to compel them to pay back money which had been improperly paid out by way of dividends; and a decree was made against them to that effect, without prejudice to their right to recover from each shareholder the amount of the capital he had received.

The next is *Wye Valley Railway Co.* v. *Hawes, 16 Ch. Div. 489 (1880).* There five directors of a railway company, recently launched, had united with the contractor who undertook to build the road, and the financial agents who handled the cash, in an arrangement by which the contractor had advanced and charged to the company money to pay dividends before there were any earnings; and the action was by the company against the five directors and the contractor and the financial agents, asking that they should pay back that money. The defendants moved, under the English practice, to have all the stockholders who had received the dividends made parties, in order to enable these directors to recover, in the same action, the money from the stockholders who had received it. The order was refused on the ground that the number was so great and the different issues likely to arise so variant and distinct that it would be inconvenient to have them made parties. The merits of the case were not discussed.

The next case is *In re Denham & Co., 25 Ch. Div. 752 (1883).* The company was in liquidation as insolvent, and the proceeding was by the creditors against four directors of the company to

recover back moneys which had been declared by way of divi-
dends when nothing was earned; and the question litigated was
as to one of the directors who had acted innocently in voting
for the dividends, which were made upon fraudulent reports and
balance sheets, the character of which he did not know; and it
was held that this director "had not been guilty of such negli-
gence or abnegation of duty as to render himself liable to repay
the whole amount of capital paid away as dividends to himself
and the other shareholders, *nor even the amount received by
himself alone as a shareholder, nor the single dividend for which
he had formally moved the resolution."*

The next is *In re Alexandra Palace Co., 21 Ch. Div. 149
(1882)*. That was an action by a liquidator against the direct-
ors to compel them to repay dividends which they had declared
and paid out of the capital and not out of the earnings; and
they were held liable.

The next is *Flitcroft's Case, 21 Ch. Div. 519,* before the court
of appeals, previously cited, which also was a winding-up and
a suit by the official liquidator to compel directors to return
moneys which they had improperly paid out to the stockholders
as dividends. That resembled the *Alexandra Case.*

*In re Oxford Benefit Building and Investment Society, 35
Ch. Div. 502 (1886),* was also a winding-up case, and the di-
rectors were decreed to repay the amount.

To the same effect is *Leeds Estate Building and Investment
Co.* v. *Shepherd, 36 Ch. Div. 787 (1887),* a case of voluntary
liquidation, and action was brought by a liquidator against di-
rectors.

The latest case is *In re National Bank of Wales, Limited, L.
R. 2 Ch. 629 (1899),* and in the house of lords, *App. Cas. 477
(1901).* That case held that although a trading corporation
might have lost part of its capital, yet if afterwards it earned
a fair dividend on the remaining capital, it might divide those
earnings without being guilty of declaring dividends out of capi-
tal; and the court held that a man who did that innocently was
not liable. At *p. 675* they say: "It follows that Mr. John Cory
is not only not liable to make good the dividends declared, but
also that he is not liable to refund those which he himself re-

ceived as a shareholder, whether before or after June 14th, 1889, for there was no breach of trust in this matter by him. His conduct before that date was not more remiss than it was afterwards." His conduct prior to 1889 was inside the statute of limitations. In that case the court of intermediate appeal expressly approved what was said by Lord-Justice Cotton in *Flitcroft's Case*. This decision was affirmed in the house of lords.

It is plain to see from all these cases that the disposition of the English courts is not to hold directors liable, except where it is necessary to pay debts.

There are a few other English cases to be found in the unofficial reports.

*Salisbury* v. *Metropolitan Railway Co., 22 L. T. (N. S.) 839 (1870)*, is relied upon as a case showing a recovery in the case of a solvent company. There were in that case two classes of stockholders—one entitled to dividends (if earned) from the beginning of the company, and the other were holders of shares called new shares, and were entitled to dividends (if earned) after a certain date; and one of the deferred stockholders filed his bill, before the time to which he was entitled to receive a dividend, to restrain payments of dividends on the old stock, and to compel the directors to restore the dividends already declared. His position was that of a *quasi* creditor, and gave him a right to have the capital preserved intact, so that he might receive his dividend when the time arrived that it was payable. Vice-Chancellor (afterwards lord-justice) James ordered the restoration of the improperly declared and paid dividends, on the strength of *Evans* v. *Coventry, 8 De G. M. & G. 835*, but expressly reserved the right to the directors to recover and recoup from the stockholders who had received their dividends the amount so received; and said that he had no doubt the directors would be able to recoup themselves, "for, having to pay future dividends, it will be presumed that they will take care to stop out those already paid from the next dividend warrants."

The next is *Municipal Freehold Land Co.* v. *Pollington, 63 L. T. 238 (1890)*. There the action was by the company against

Siegman *v.* Maloney.

the stockholders, and it was heard by Judge Kekewich. It does not affirmatively appear that the money sought to be recovered was necessary to pay debts, but I think it may be fairly inferred that such was the case. The judge, in his opinion, speaks of the heavy losses incurred by the company. Its business was to finance building operations; and the stockholders, being ·personally liable, may have managed to avoid winding-up proceedings. It is the only case in England that I have found where there was a recovery in which it did not appear· affirmatively that it was for the benefit of creditors.

The case of *London Trust Co.* v. *Mackenzie, 62 Law Jour. Ch. (N. S.) 870,* is not in point. It was a suit to recover from individual directors sums of money which they had improperly paid to themselves. It was not a case of improper dividends.

Turning to the cases in this country, we have, first, *Roebling's Sons* v. *Mode, 1 Penne. (Del.) 515.* That was an action by a judgment creditor against the directors of an insolvent corporation to compel them to apply to the payment of the judgment the amount of dividends which they had declared in excess of profits while they ·were administering the corporation. The Delaware statute is precisely like ours, with the exception that a comma appears after the word "corporation." And it was held, on demurrer, that the judgment creditor could not recover. Chief-Justice Lore, in enforcing his argument that the action must be for the benefit of all concerned, and not by a single creditor, uses language which indicates an opinion that it might be recovered by the corporation whether it was needed to pay debts or not; but what was said was merely illustrative, and is nothing more than *dictum.*

Another case is *Minnesota Thresher Co.* v. *Langdon, 44 Minn. 37.* There the corporation was insolvent, and the only question before the court was whether a suit for the benefit of a creditor should be by the creditor or by the receiver of the corporation; and it was, in accordance with the Delaware case, held that it should be brought by the receiver, and not by the creditor.

In *People* v. *Savings Union, 72 Cal. 199 (1887),* the case was made up amicably between the attorney-general and the

directors of a corporation to test the question whether, in a certain condition of the company, they were, under the statute of California, entitled to declare a dividend. It was held that they were not so entitled.

In the case of *Excelsior W. & M. Co.* v. *Pierce, 90 Cal. 131* (*1891*), the judgment was for the defendant on the merits. It does not appear whether the question here involved was found or was considered in that case.

The case of *Railroad Co.* v. *Bridges, 7 B. Mon. 556,* although entitled railroad company, plaintiff, was really an action brought by a judgment creditor of an insolvent company to recover from the directors illegal dividends. It was held that directors were entitled to have any money they were compelled to pay by the judgment of the court refunded to them by the stockholders who received the dividend.

*Grant, Assignee,* v. *Ross, 100 Ky. 44,* was a suit by an assignee in insolvency.

The State of New York has a statute nearly, if not quite, like our own, which was dealt with and received great consideration in the case of *Dykman* v. *Keeney, 10 App. Div. 610,* and, again, *16 App. Div. 131,* and by the court of appeals in *160 N. Y. 677.* That was a suit by a receiver to recover from the directors of an insolvent bank the amount of a dividend which they had declared contrary to the provisions of the Banking act of New York under which the bank was organized. That act made it unlawful to declare dividends out of capital, and laid down a stringent rule as to what assets it should be lawful to consider as good in making up a balance sheet for the purpose of a dividend. The balance sheet, upon which the dividend, which was alleged to be unlawul, was based, included a large asset—a promissory note—without counting which no profit was shown, which note, at the time of the declaration of the dividend, was not a lawful asset, under the banking act, but was subsequently paid. The receiver contended that the liability having once attached, the fact that the asset was afterwards realized was immaterial. The court held otherwise; and, in answer to the argument that the statute was penal, held that

the section under which the action was brought was not to be treated as a penalty, but as an indemnity for any loss which the corporation or its creditors might sustain from the prohibited acts. The reason for this judgment is set forth at length in *10 App. Div. 610.*

*Cockerell* v. *Cooper, 86 Fed. Rep. 7,* was an action by the receiver of an insolvent national bank against the directors for losses incurred by reason of loans made by the directors on bad security and contrary to the act of congress. The matter came up on demurrer, and the only question was the application of the statute of limitations; and it was held that it did not apply. The case has no application here.

*Kisterbock's Appeal, 51 Pa. St. 483,* was this: A company was organized which was partly in the nature of a building loan association and partly in the nature of a savings bank, and seemed to have a capital stock aspect. Kisterbock was a director and was interested in keeping the institution going, and the directors declared what were called dividends, but which were really payments of interest on deposits, beyond what the company was able to pay, the object undoubtedly being to allure further deposits, or payments to the company in the nature of deposits, and to make up the money necessary to pay the last dividend of that nature he loaned the company $1,000. It went into insolvency, and he claimed a preference for his debt of $1,000 over that of the depositors or stockholders—whatever they might be termed. The company was badly insolvent. It was held that he was not entitled to that preference.

There can be no doubt that, independent of the statute, the action of directors in knowingly declaring dividends that are not earned is entirely unwarranted, and may be enjoined at the instance of a stockholder.

Further, such action on the part of directors may—I do not say it will—render them liable in an action brought by individual stockholders who have been induced, by the publication of such dividends, to believe, contrary to the fact, that the company was prosperous and earning dividends, to purchase shares therein. But the fact, if it be a fact, that the complainant

stockholders herein have been deceived—and such is claimed in the arguments of counsel—by the dividends set out in the bills of complaint, and induced thereby to purchase their stock, can have no effect on the merits of the present question. An action based on such deceit would be one directly between the deluded purchaser of stock and the director or directors who had deluded him, and the measure of damages would be the amount which he had lost by reason of the deceit; and a recovery in the present suits would be no bar to such action.

Dividends declared for the purpose of inducing purchases of stock have been the subject of severe censure by distinguished judges. See the language of Lord Campbell and Lord Brougham in *Burnes* v. *Pennell, 2 H. L. Cas. 497* (*1849*), and of Lord Campbell in *Regina* v. *Brown, 7 Cox C. C. 442,* which was an indictment. But, again, the justness of such censure can have no effect on the solution of the present question.

The most plausible argument in favor of the construction contended for by the complainants is that there may be, and naturally is, more or less of injury resulting to the prosperity of the company by a withdrawal of a part of its capital, and that the damages resulting from such injury are difficult of ascertainment, and hence such a case is properly classified with that class of cases in which the law permits the parties to agree upon a sum as liquidated damages, to be recovered for a breach of a contract. I am unable, however, to adopt that view. I think it not warranted by the wording of the act. In this connection the words "shall be liable   *   *   *   *   *to* the full amount" are significant. The word "to" seems to me to indicate that the liability may, under supposable circumstances, be less than the whole amount of the dividends paid. In the case of a contract for liquidated damages the precise sum agreed upon is always recoverable. In short, I think the rule adopted in *Dykman* v. *Keaney, supra,* more reasonable, namely, that the provision in the act is intended as an indemnity against injury, such as is capable of computation in dollars and cents, and, giving it that construction, will avoid enforcing a pure penalty.

The difficulty of giving the statute any construction, except

to provide a fund to satisfy creditors, is so great, that I conclude that to be the safer and better one.

One other aspect of the case has been discussed and considered. Siegman—complainant in the *Vehicle Co. Case*—admits that he received each of the illegal dividends, but avers that he did it innocently in the honest belief that they were actually earned.

Appleton—complainant in the *Malting Co. Case*—is silent in his bill as to the receipt of dividends. He neither admits their receipt, nor excuses himself for receiving them. I think the presumption must be that he has been a stockholder from the start, and that he has received all the illegal dividends.

One of the points made by the demurrants in Appleton's case is that, by reason of receiving dividends, he is estopped from prosecuting this suit. After the demurrer was filed, one Bennett applied by petition to Vice-Chancellor Stevenson asking to be made a co-complainant with Appleton by reason of his ownership of shares of stock in the Malting company. The application was resisted by the defendants, and was at first refused by the learned vice-chancellor, on the ground that the petitioner could not entitle himself to act as a complainant in behalf of the company (in the absence of the element of needy creditors) without showing affirmatively that he was guiltless of complicity in the illegal conduct of the directors. The petitioner amended his petition in this respect, and was admitted as a party complainant. In giving his reasons orally for this action the learned vice-chancellor took the view of the statute which I have adopted, namely, that, except when necessary to pay debts, the enforcement of the act was highly penal, and not to be favored by a court of equity.

Upon this state of the pleadings it was argued by demurrants, on the one side, that the complainants cannot be heard without offering to pay back the dividends they have received, and, on the other side, on behalf of the complainants, that such offer is not necessary, but, if necessary, it may be made orally at the argument; and I understood counsel to make such offer; and it was further argued by counsel for complainants that much of the stock of these companies may have changed hands since the

dividends have been paid, and the present holders may not have received any part of the illegal payments.

I think that neither of these arguments, on either side, can prevail. The suit is brought, not for the complainants or either of them, or for any particular set or class of stockholders, but for the benefit of the corporation, and, through it, for the benefit of all the stockholders. There can be no distinction made between different stockholders, and no inquiry as to which has, or has not, received these dividends.

Further, I think there can be no presumption that any of the stock has been sold and transferred on the books of the company at any time. If any shareholder who has received a dividend has afterwards transferred his stock, the transferee takes it subject to all the equities existing between its former holder and the corporation. To attempt to give any preference to a recent transferee would lead the court into insurmountable difficulties. All the stockholders, after receiving the illegal dividends, might transfer their stock, and, upon the theory advanced by the complainants, might assure the transferees that they could compel the directors to make good to the company the dividends so paid, and such restoration would make the stock as valuable intrinsically as it was before the dividends were paid. In other words, the shares of stock, plus the dividend paid out, is, in contemplation of law, worth as much as it was before the dividend; and if the amount of the dividend is repaid to the company by the directors, the shares without the dividend become worth as much as before the dividend was paid, and the amount of the dividend is just so much clear profit to the shareholder; and the presumption is that the purchaser of the shares inquires into and becomes aware of the true *status* of the affairs of the company before purchasing. This court cannot undertake to act as guardian of persons who buy shares of stock on the market upon mere street information, and without actual inquiry into the intrinsic value thereof.

The result of my examination of the questions raised by the demurrers and elaborately argued on both sides is—*first,* that the true construction of the section of the act in question limits

its operation to cases where the assets of the corporation are insufficient to pay its creditors; *second,* if, however, the construction contended for by the complainants is the true one and the action may be maintained by the corporation without regard to its financial needs, then I am of the opinion that its use for that purpose is highly penal, and this court will not entertain a suit for its enforcement, although, by reason of the peculiar circumstances of the case, the stockholders may have no remedy in any other court; in other words, it would be unjust and inequitable for the stockholders, directly or indirectly, to recover from the directors the very moneys which they have already received.

I will advise that the bills be dismissed, with costs.