## SIEGMAN v. ELECTRIC VEHICLE CO. et al.

### (Circuit Court, D. New Jersey. August 21, 1905.)

1. CORPORATIONS—DISCRETION OF DIRECTORS.

   The purely discretionary powers of a board of directors of a corporation concerning its internal affairs, fairly and honestly exercised, are not reviewable or controllable by a court of law or equity.

2. SAME—ILLEGAL PAYMENT OF DIVIDENDS—LIABILITY OF DIRECTORS UNDER NEW JERSEY STATUTE.

   Section 30 of the corporations act of New Jersey of 1896 (P. L. p. 286) provides that "no corporation shall make dividends except from the surplus or net profits arising from its business, nor divide, withdraw or in any way pay to the stockholders or any of them any part of its capital stock except according to this act, and in case of any violation of the provisions of this section the directors under whose administration the same may happen shall be jointly and severally liable * * * to the corporation and to its creditors in the event of its insolvency to the full amount of the dividend made," etc. As construed by the highest court of the state, such statute imposes an absolute liability on directors making an illegal payment of dividends, which is to the corporation if solvent. *Held*, that such statute also imposes on a succeeding board of directors the absolute duty of enforcing the liability of prior directors for its violation impairing the capital of the corporation; that the matter is not one pertaining to the internal affairs of the corporation, as to which their discretion is controlling, even though exercised in good faith; and that where both directors and stockholders refused to bring suit to enforce such liability a single stockholder was entitled to bring the same in behalf of the corporation against one or more of the directors liable. *Held* also, that a plea to a bill filed by a stockholder in such suit, which did not deny the allegations of the bill that dividends paid were in violation of the act, and that the directors failed to make an examination of the financial condition of the company, but placed an inflated valuation upon its assets for the purpose of making it appear that there was a surplus, and did not allege facts showing that they acted in good faith, did not state a defense.

In Equity. On bill and plea.

James E. Howell, for complainant.

Richard V. Lindabury, Charles L. Corbin, and William H. Page, Jr., for defendant Electric Vehicle Co.

LANNING, District Judge. The complainant in this cause is a holder of preferred and common stock of the Electric Vehicle Company. By his bill he seeks a decree requiring the defendant Martin Maloney to pay to the defendant the Electric Vehicle Company the sum of $704,800, being the amount distributed as dividends amongst the stockholders of the company in 1899 and 1900, which the complainant charges were paid with the aid of the vote of Mr. Maloney, then a director in the company, not out of the surplus or net profits, but out of the capital of the company. The present board of directors have refused to comply with the complainant's demand that they sue the directors of 1899 and 1900 to compel them to make good the impaired capital, and the complainant has now filed the bill in this suit against the Electric Vehicle Company and Mr. Maloney to secure the relief to which he deems his corporation entitled.

The Electric Vehicle Company has filed a plea, together with a supporting answer, as required by Equity Rule 32, and the present hearing is upon the bill and that plea only. The bill cannot be sustained unless the complainant shows that in their refusal the present board of directors have violated a trust or disregarded a plain duty. Corporations, like individuals, often have enforceable rights against others which it is deemed best not to press to suit. The purely discretionary powers of a board of directors concerning the internal affairs of their corporation, fairly and honestly exercised, are not reviewable or controllable by the courts of law or equity. A board of directors is elected by the stockholders of a corporation for the very purpose of managing its affairs, and in so doing, so long as they act in good faith and strictly intra vires, it is their judgment, and not that of its stockholders outside of the board of directors, or of any court, that is to shape its policies or decide upon its corporate acts. This principle is not disputed, and the citation of authorities in its suppport is unnecessary.

But section 30 of the New Jersey general corporations act of 1896 (P. L. p. 286), under which the Electric Vehicle Company is incorporated, provides that:

"No corporation shall make dividends, except from the surplus or net profits arising from its business, nor divide, withdraw, or in any way pay to the stockholders or any of them, any part of its capital stock, or reduce its capital stock, except according to this act, and in case of any violation of the provisions of this section, the directors under whose administration the same may happen shall be jointly and severally liable, at any time within six years after paying such dividend, to the corporation and to its creditors, in the event of its dissolution or insolvency, to the full amount of the dividend made or capital stock so divided, withdrawn, paid out or reduced, with interest on the same from the time such liability accrued; provided, that any director who may have been absent when the same was done, or who may have dissented from the act or resolution by which the same was done, may exonerate himself from such liability by causing his dissent to be entered at large on the minutes of the directors, at the time the same was done, or forthwith after he shall have notice of the same, and by causing a true copy of said dissent to be published, within two weeks after the same shall have been so entered, in a newspaper published in the county where the corporation has its principal office."

It thus appears that the legislative policy is to require the capital of a corporation to be preserved, unimpaired by the payment of dividends out of it, not only for the protection of creditors in the event of insolvency, but of the corporation itself while solvent. A board of directors have no legal power to declare dividends and direct their payment when they know, or ought to know, that the payment will result in impairing the capital fund of their corporation.

The substance of the complainant's charges is that when Mr. Maloney and the other directors of 1899 and 1900 declared the dividends of those years they made no examination of the financial condition of the company, that they knowingly made inflated valuations of certain stocks appearing amongst the assets of the company for the purpose of building up a fictitious surplus as the apparent warrant for the declarations of dividends, and that Mr. Maloney knew there was no real surplus out of which to pay the dividends.

The plea sets forth the resolutions of the present board of directors, which are as follows:

"The board of directors having examined the report of the committee appointed to consider the application of Richard Siegman, and having heard the statements made by the committee, and having examined documents, accounts and statements showing the history and affairs of the Company in the years eighteen hundred and ninety-nine and nineteen hundred, and the board being satisfied from its examination that the dividends declared in those years were reasonably made in the light of what was known and believed at the time, and that the said dividends were declared fairly and in good faith, and that it is not for the interest of the company that suit should be brought against the directors to recover said dividends, and the advice of counsel having been taken regarding the power and duty of this board:

"Resolved, that the demand of Richard Siegman that suit be brought against the former directors of the company to recover the dividends declared by them in the years eighteen hundred and ninety-nine and nineteen hundred, be and the same hereby is denied, unless and until such suit shall be ordered by a majority, in interest, of the stockholders, other than the said former directors, and that unless so ordered, no suit shall be brought by the company or on its behalf to recover from the said former directors any of the dividends declared.

"Resolved, that on the written demand of Richard Siegman or of any other stockholders the president shall call a special meeting of stockholders to consider the application of said Siegman, or of such other stockholders, for the bringing of such suit."

It also appears by the plea that after the adoption of these resolutions the complainant requested that a special meeting of the stockholders be called to consider the complainant's demand; that on February 24, 1904, the meeting was held, each stockholder having been previously served with notice of the call, and with a copy of the complainant's demand, of the report of the committee, of the resolutions of the board, and of the complainant's request for a special meeting of the stockholders; and that at this meeting of the stockholders the following resolutions were adopted by a vote representing 124,759 shares against a contrary vote representing 650 shares:

"Whereas, it appears that no just ground exists for a suit against the former directors of the company on account of the declaration by them of the dividends in the years 1899 and 1900; and it further appears that it is not expe-

dient nor for the interest of the company that a suit on that account should be brought against the said former directors: Therefore, resolved, that the action of the board of directors in refusing to bring suit against the former directors of the company to recover dividends declared by them in the years 1899 and 1900 be approved and ratified. Resolved, that no suit shall be brought by the company, or on its behalf, to recover from the former directors of the company any of the said dividends declared by them, or to recover any damages or penalties on account of such declaration of dividends."

The plea also shows that of the vote against the adoption of the resolutions representing 650 shares the complainant owned 400 shares, and that in the vote for their adoption, which represented a majority of all the shares of the company, none of the shares owned by the directors of 1899 and 1900 were represented. The plea closes with the statement that the company's—

"Directors and stockholders, in refusing to bring suit to recover the dividends declared by its former directors in the years 1899 and 1900, and in deciding that no suit should be brought by the company or on its behalf to recover from said former directors any of the dividends so declared, or to recover any damages or penalties on account of such declaration of dividends, acted in good faith and for the benefit of this defendant, and did not act, and did not intend to act, for the benefit of said former directors who participated in the declaration of said dividends for the years 1899 and 1900, and that the refusal of the said directors to bring said suit and of the said stockholders to order and direct that the same should be brought was lawful, and not in violation of the duty of either the said directors or stockholders to this defendant."

In the report of the committee of the board of directors, which forms a part of the plea, it is said:

"It is now known that the whole enterprise upon which the company was embarked was unsound, but that was not suspected at that time (when the dividend of April 15, 1900, was declared). The confidence of the stockholders and directors in their enterprise during the year 1899 is evidenced by the market price of their stocks. The directors who were in office when the dividends wer declared were large stockholders, and continued to be such when the experience of the year 1900 demonstrated that the enterprise as originally projected was a failure."

There is no averment in the plea that any profits were ever earned. On the contrary, as I read it, it seems to be a plea of confession and avoidance. But in Appleton v. American Malting Co., 65 N. J. Eq. 375, 380, 54 Atl. 454, 456, the highest court of New Jersey, in construing section 30 of the general corporations act (P. L. p. 286), said:

"The apparent object of the provision is to afford protection equally to the corporation and to its creditors against loss by reason of the illegal act. But the creditors can suffer no injury from it unless the capital is so impaired as to render the company insolvent. Not so with the corporation. Any impairment of its capital is harmful to it in some degree, the seriousness of the injury depending upon the extent of the impairment. For the full protection of the company the liability of the directors must be absolute. No liability on the part of the directors is required for the full protection of creditors, except in case of the insolvency of the corporation, or possibly in the event of its voluntary liquidation. The words of the statute give this full measure of protection. For disobedience of its mandate, 'the directors shall be jointly and severally liable to the corporation, and to its creditors in the event of its dissolution or insolvency'—to the corporation in any event, to the creditors in the event expressed in the statute. In our judgment, the Legislature intended by this provision to afford the full measure of protection which the words provide."

Section 30, as thus construed, certainly imposes upon a board of directors the duty of making a fair and honest effort to ascertain whether a proposed dividend can be paid without impairment of the capital. They must make an examination of the corporation's assets and its liabilities. They must value its assets at no higher figures than reasonably prudent men would do. If the proofs show such a loose and unbusiness-like examination of the affairs of the company, or such inflated valuations of its assets, as to overcome the proofs of the good faith and honest purposes of the directors, their payment of a dividend which impairs the capital puts them in the position of liability to make the impaired capital good. The defense of good faith is one of fact. Since no replication to the plea has been filed all facts well pleaded by it must be taken as true. Farley v. Kittson, 120 U. S. 303, 314, 7 Sup. Ct. 534, 30 L. Ed. 684. But in my judgment the defense of good faith on the part of the directors of 1899 and 1900 cannot be inferred from the facts set up in the plea. The only facts presented concerning the first dividend of $184,800, paid April 1, 1899, are contained in the report of the committee of the present board of directors and in the resolutions of the present board. The resolutions have already been quoted. In the report we have the following:

"Business was carried on in 1898 with success, and the prospects seemed very good. In February, 1899, a sale was made of a plant constructed by the company in New York City for the manufacture and operation of electric vehicles in that city. This sale was made to a new company, called the New York Transportation Company, for a large sum of money, which was paid in cash, and as a part of the transaction a contract was made by this company with that company, assuring to this company a large income from the business of the New York Company if successful, and soon after like contracts were made with several other companies with large capital operating in defined territories in other parts of the country. On March 7, 1899, there were outstanding preferred shares amounting to one million and sixty thousand dollars, and common five million dollars, and a dividend was declared on that date of eight per cent. on preferred stock for the year 1899, and two per cent. on common, amounting to $184,800. This dividend was fully warranted by the surplus accumulated."

There is nothing in the report of the committee that throws the least light upon the question of the bona fides of the directors of April 1, 1899, nor do the resolutions of the board disclose the nature of the "documents, accounts, and statements" examined by the board, or even a single act of the directors of April 1, 1899. The same failure to plead facts from which good faith on the part of the directors of 1899 and 1900 may be inferred, exists as to the dividend of $140,000 on July 1, 1899, of $140,000 on October 1, 1899, of $140,000 on December 29, 1899, and of $100,000 on April 15, 1900. Assuming, therefore, that the declaration of these dividends in good faith by the directors of 1899 and 1900 would be a valid defense to this suit, the plea fails to present that defense in the proper manner.

The closing statement of the plea alleges good faith on the part of the present board of directors. It is apparent that this allegation has the same defect as the one concerning the good faith of the directors of 1899 and 1900. The mere declaration that the present

board of directors acted in good faith is not sufficient. The facts upon which that declaration is founded must be pleaded.

The next feature of the plea to be referred to is in that part of it which declares that the stockholders by an overwhelming majority have resolved that "no suit shall be brought by the company, or on its behalf, to recover from the former directors of the company any of the said dividends declared by them, or to recover any damages or penalties on account of such declaration of dividends," and in its closing statement, in which it is said that the action of the stockholders was in good faith and for the benefit of the company. Is the complainant, notwithstanding the fact that he appealed from the decision of the board of directors not to sue to the stockholders and was there defeated, entitled to press his suit? The New Jersey Court of Errors and Appeals has said that when the capital of a corporation has been impaired by the illegal payment of dividends, the liability of the directors authorizing the payment is "absolute." The liability, where the corporation is solvent, is to the corporation. The legislative policy requires the capital to be preserved without diminution by the payment of dividends. Such policy imposes no hardship upon the directors. If upon a fair and just ascertainment of the financial condition of a corporation it appears that a proposed dividend may be paid without impairment of capital, the sudden decline of the value of the assets of the corporation, or the diminution of its assets from other causes, even below the point of solvency, after the declaration of the dividend, will not render the directors liable either to the corporation or its creditors. But when a stockholder sues former directors on behalf of his corporation to compel them to make good impaired capital because the present board of directors will not sue, and charges that the former directors knew that there were no profits or surplus out of which to pay a dividend, and that they built up, as an apparent warrant for such payment, a fictitious surplus by inflated valuations of assets, I think his appearance in court for the purpose of proving his charges, enforcing the rights of his corporation, and vindicating the legislative policy, should be approved. The building up of a fictitious surplus by a board of directors does not pertain to the management of the internal affairs of a corporation. It is an act wholly beyond the powers of the corporation. It cannot, in view of section 30 of the corporations act, be confirmed. And a board of directors, who refuse to sue the officers committing such an act, refuse to take the only proceedings known to the law by which they may enforce a liability which is "absolute," and consent that their corporation shall continue to carry on its business not only without a surplus, but with a capital impaired by a carefully planned violation of the mandate of the Legislature that "no corporation shall make dividends, except from the surplus of net profits arising from its business." I cannot see how the plea of good faith or honest purpose, by directors or stockholders, is any answer to such a dereliction of duty. As I view the matter, the statute imposes upon the board of directors in every such case an imperative duty. That duty is to seek to have restored to the corporation the amount illegally withdrawn from its

capital. The only way by which a director who is present at a meeting where such an illegal act is done, or by which a director absent from the meeting, may exonerate himself from the statutory liability, is "by causing his dissent to be entered at large on the minutes of the directors, at the time the same was done, or forthwith after he shall have notice of the same, and by causing a true copy of said dissent to be published, within two weeks after the same shall have been so entered, in a newspaper published in the county where the corporation has its principal office." This requirement of prompt publication to the world of the illegal act emphasizes the fact that the act has no relation to internal management.

In the present case, according to the allegations of the bill of complaint, the directors of 1899 and 1900 committed acts clearly establishing their joint and several liability to the Electric Vehicle Company. The complainant has chosen to proceed against no other director than Mr. Maloney. He has that right of choice. The plea of the Electric Vehicle Company sets forth no facts showing Mr. Maloney's discharge from the liability which, according to the allegations of the bill, he has incurred. Mr. Maloney's defense to the bill, with which we are not at present concerned, may give a very different aspect to the case. But on the present hearing the plea of the Electric Vehicle Company must be overruled. The complainant is entitled to costs.