11 P.(2d) 261

CARTWRIGHT v. ALBUQUERQUE HOTEL CO., Inc., et al.

No. 3645.

Supreme Court of New Mexico.

May 2, 1932.

Summers Burkhart, of Albuquerque, for appellant Cartwright.

M. C. Mechem and George S. Downer, both of Albuquerque, for appellants Albuquerque Hotel Co. and George Roslington.

Marron & Wood, of Albuquerque, for appellees.

WATSON, J.

This case involves numerous parties, pleadings, and issues. To keep the opinion within bounds, we shall omit everything unnecessary to the decision.

Plaintiff, an owner of common stock of defendant Albuquerque Hotel Company, a domestic corporation, sued to obtain an adjudication of the invalidity of an attempted amendment of article IV of the certificate of incorporation, changing the rights of the holders of preferred stock. Formerly the holders of such stock were entitled to noncumulative 8 per cent. dividends. The amendment attempts to give them the right to 8 per cent. dividends each year, regardless of the existence of a surplus or net profits arising from the corporation's business, and to make them creditors of the corporation with respect to such dividends.

George E. Breece, George Roslington, and Albuquerque Gas & Electric Company were alleged to be holders of a majority of the preferred stock, and were made defendants as such holders, and as representative of numerous other preferred stockholders.

The pleadings of defendants Albuquerque Hotel Company and George Roslington need not be mentioned. Upon the question which will here be decisive, their position is the same as plaintiff's.

Defendants Breece and Albuquerque Gas & Electric Company, by a cross-complaint, raise the principal issue. They allege that the amendment was adopted in conformity to a contract by the terms of which, and the cir-

cumstances surrounding which, all parties are, as they contend, estopped to assert its invalidity. They asked and obtained what amounts to a specific performance of that contract. Judgment was rendered on the cross-complaint, finding an indebtedness of the corporation to the preferred shareholders under the amendment, making such debt a first and prior lien on the corporate property, subject only to prior rights of creditors, if any, and providing for the satisfaction of the lien by sale or mortgage of the property.

From this judgment plaintiff, as well as defendants and cross-defendants Roslington and Albuquerque Hotel Company, have appealed.

The fundamental error relied upon is that the amendment is void as against public policy, and as against the express prohibition of statute, 1929 Comp. St. § 32-135; that, being thus void, no consent or agreement by the corporation or any stockholder, nor the acceptance and retention of any benefits in connection with such consent or agreement, can estop either corporation or stockholder.

By the section mentioned, it is provided that "No corporation shall make dividends, except from the surplus or net profits arising from its business, * * *" and provided further that the directors under whose administration dividends may be made in violation of this provision "shall be jointly and severally liable * * * to the corporation and to its creditors, in the event of its dissolution or insolvency, to the full amount of the dividend made. * * *"

Appellees contend that the prohibition of section 32-135 does not extend to preferred stock; that the act (1929 Comp. St. c. 32, art. 1) as a whole contemplates the issue of preferred stock with the qualities of a corporate debt, or a conversion of preferred stock into debts; that the prohibition against paying dividends from capital is for the benefit of creditors; that the amendment is not void but merely voidable at the instance of the creditors; and that the corporation and its stockholders may be estopped to question its validity.

Fortunately these questions have been in great measure answered for us in New Jersey, whence we took our statute.

No less an authority than Vice Chancellor Pitney once entertained some of the views here pressed by appellees. He held that the liability of directors for paying dividends from capital was "to provide a fund to satisfy creditors," but that "as between the company, where there are no creditors, and the stockholders who have received the money, and the directors who ordered it paid, * * *" equity would not hear the stockholders' demand for recovery against the directors for the benefit of the corporation. Appleton v. Rodman, 63 N. J. Eq. 422, 51 A. 1003.

But on appeal the Vice Chancellor's decree dismissing the bill was reversed. Appleton v. American Malting Co., 65 N. J. Eq. 375, 54 A. 454, 456. The higher court held that: "The apparent object of the provision is to afford protection equally to the corporation and to

its creditors against loss by reason of the illegal act." The evils of declaring dividends from capital are so pointed out in this opinion as plainly to show that the prohibition and the directors' liability are also for the protection of the general public against fraud. If that view be accepted, it follows, we think, that the payments of dividends contemplated by the amendment here in question are void as against the public policy of this state, as declared by the Legislature.

This decision was followed in Siegman v. Electric Vehicle Co., 72 N. J. Eq. 403, 65 A. 910, 912; Mr. Justice Pitney himself there delivering the opinion. There it was pointed out that it is the corporation itself that is disabled. It was also said: "Where it [the statutory prohibition] is intended for the protection of the public as well, or is otherwise dictated by public policy, it is not easy to see how even the unanimous consent of the stockholders may give sanction."

Since in that case the only sanction claimed was by a majority vote of stockholders, the question was not present and was not decided. See, also, Siegman v. Electric Vehicle Co. (C. C.) 140 F. 117; Tooker v. Nat. Sugar Refining Co., 80 N. J. Eq. 305, 84 A. 10; Southern California Home Builders v. Young, 45 Cal. App. 679, 188 P. 586; Benas v. Title Guaranty Trust Co., 216 Mo. App. 53, 267 S. W. 28.

Strickland v. National Salt Co., 79 N. J. Eq. 182, 81 A. 828, 830, involved a transaction of which the court said: "In effect this transmuted their [preferred shareholders'] contingent right as stockholders to dividends into an absolute right as creditors to receive a debt."

The certificate thus attempting to assure dividends regardless of profits was held invalid. It was distinctly held by the court that the doctrine of estoppel to plead ultra vires "is applicable only to ultra vires contracts in the proper sense of the term—that is to say, contracts that are beyond the statutory powers of the corporation. It is not applicable to contracts expressly prohibited by statute, and contrary to the public policy of the legislature."

This court recently made this distinction, and quoted this language. Melaven v. Hunker, 35 N. M. 408, 299 P. 1075. It is in accord with the "majority rule in state courts." 3 Fletcher Corporations, § 1543.

We have found no express statement that section 32-135 applies to dividends on preferred stock. The language includes such dividends. We see no good reason to exclude them by construction. The capital will be impaired by the one sort of dividend as well as by the other. In Siegman v. Electric Vehicle Co., 72 N. J. Eq. 403, 65 A. 910, supra, both were involved. See the opinion of the Vice Chancellor, Siegman v. Kissel, 71 N. J. Eq. 123, 62 A. 941. So, also, in Siegman v. Electric Vehicle Co. (C. C.) 140 F. 117, supra. Schoenfeld v. American Can Co. (N. J. Ch.) 55 A. 1044, involved preferred stock only. In that case injunction was denied on the ground

that the liability of the directors furnished an adequate remedy if dividends should be paid from capital.

Other sections of the statute do contemplate decreases of capital stock, conversion of preferred stock into bonds, and issuing of preferred stock redeemable at fixed times. Sections 32-119, 32-120, 32-134. But these operations are surrounded with restrictions and regulations designed for the protection of interested parties; all of which were ignored in adopting the amendment.

"The supplement approved March 28, 1902 [1929 Comp. § 32-120], is a restraining, and not an enlarging, act, and its provisions must be observed, to render the retirement of shares by purchase legal." Berger v. United States Steel Corp., 63 N. J. Eq. 809, 53 A. 68 (Syl.).

These restrictions and regulations illustrate the importance of the prohibition against paying dividends from capital, and strengthen the view that it applies to all dividends. Even when the preferred stock is to be redeemed at par at a fixed time (section 32-119), dividends as corporate debts do not seem to be contemplated. They "may be made payable before any dividends shall be set apart or paid on the common stock, and such dividends may be made cumulative."

We are thus brought to sustain appellant's main contention. The attempt to authorize dividends from capital is void. It is prohibited to the corporation itself. It is against declared public policy. It cannot be accomplished by any authorization, any ratification, or any estoppel.

Appellees contend, however: "Under the facts as found, owners of so-called 'preferred' stock had the status of creditors and not stockholders."

As we understand this contention, it is that the amendment serves rather to confirm than to add to the rights previously possessed. Of course, if such a provision is void, it will be a matter of no consequence whether it gets into the articles of incorporation originally or by amendment. If the contention has any merit, it must go to the extent of claiming that what appears to be a certificate of stock ownership is really a certificate of indebtedness; that the proceeds of what is denominated preferred stock became no part of the corporation's capital; and that the words "stock" and "dividends" are misnomers.

It cannot be, and is not contended, that this creditor status is reflected in the articles before the amendment. They provide, in substance, for a capital stock of $500,000, consisting of 200,000 shares of common and 300,000 shares of preferred, and specify then "the relative rights of the two classes of stock." They exclude preferred stockholders from voice in management, entitle them to annual dividends "payable exclusively out of the net profits earned by the corporation during the preceding year," noncumulative, and not exceeding 8 per cent., in preference to dividends on common stock, and entitle them in case of liquidation to payment at

face value before distribution to holders of common stock.

But appellees contend that these provisions of the articles are not conclusive, and that other evidence may be consulted to determine the true status. They cite 6 Fletcher, Corporations, §§ 3631, 3632, and numerous illustrative cases. We need not question the soundness of Fletcher's proposition that the stock certificate may be interpreted in the light of the general law, and of documentary evidence, including the articles of incorporation. Nor need we question the soundness of any of the decisions cited. The attempt here is to vary the plain meaning of the articles. The stock certificate is not in the record. Appellees would vary this meaning "under the facts as found." So far as we can see, the parole evidence rule would bar the attempt. In this case, however, we have considered the extraneous matters on which appellees rely.

First it appears that in the contract on which the claim of estoppel is based, and by which appellant Roslington, as controlling a majority of the common stock, agreed to procure the amendment, there is recited, "on behalf of the preferred stockholders," a contention: " * * * That it was contemplated in organizing the company that their rights should be substantially those of creditors, and that the return of their principal invested and 8 per cent. annually thereon was contemplated to be in effect a debt. * * *"

How this mere recital of a contention can influence the interpretation of the articles or of the stock certificates presumably conforming thereto we do not see, and appellees fail to explain.

■ Next we are referred to findings made at plaintiff's request to the effect that the amendment constitutes an unconditional obligation to pay the dividends, regardless of surplus or profits, out of capital, and creates a debt of the corporation and makes the preferred stockholders its creditors. These findings are correct on their face, but we do not see how they can aid appellees' contention.

At appellees' request the court found:

"2. That the company was organized, and subscribers to the preferred and common stock * * * were solicited and secured by its promoters upon an announced plan and purpose * * * that the common stockholders should have the entire control and management of the company, and the entire stockholders' responsibility therefor; that all additional moneys needed to carry out the project over that secured from the sale of the common stock, should be furnished and supplied by sale of preferred stock to subscribers, who should occupy to the company and the common stock the relation, in effect, of creditors, and entitled as such to a return and compensation of 8 per cent. per annum on their investment in every year in which the company's income, after paying the ordinary carrying charges, should be equal to that sum; and the entire surplus in any year when it did not; and a return of their principal on winding up the company.

"3. That in furtherance of said plan after the organization of said corporation and on or about the 24th day of January, 1921, the articles of incorporation, which originally provided for ordinary preferred and common stock, were amended to provide that the capital stock of the corporation should be $500,-000.00, consisting of a like number of shares of the par value of $1.00, of which 200,000 shares should be known as 'common' stock and 300,000 shares as 'preferred' stock, which preferred stock should have the * * * status and rights * * *" hereinbefore stated in describing the situation prior to the amendment here questioned.

"4. That after the amendment of the articles of incorporation * * * the various civic organizations of the City of Albuquerque, and other public spirited people organized and carried on a movement or so-called drive, to procure funds to erect the hotel and further the purpose for which it was organized, and generally made public pronouncements through advertisements, and otherwise, in substance and to the effect that * * * the plan and purpose * * * to be followed would enable the purchasers and owners of the so-called 'preferred' stock to occupy in all practical and substantial respects, the status of creditors, and be assured of the 8 per cent. return on their money promised them, whenever the company came to a practical earning basis, and that such earnings would not, and by reason of its having no other incumbrances, there would not be a need or danger of such earnings being held back or

necessarily or properly, used to liquidate other debts and claims."

In this finding 2 we suppose "the company's income, after paying the ordinary carrying charges," to mean, in effect, profits. If so, the representation of promoters, that purchasers of preferred stock should be in effect creditors, is so qualified that such representations were really made good in the certificates issued.

Again in finding 4 the general assurance as to the creditor status of holders of preferred stock is qualified by the expression, "whenever the company came to a practical earning basis." The promise does not approach the status which the amendment would give.

These findings we think insufficient to enable a court, if it had the power, to change the financial structure of this corporation on the theory that the parties concerned intended that dividends on preferred stock should not be contingent upon earnings. Much less do they support the conclusion that the subscribers to the preferred stock were led to believe that they were loaning to the company rather than contributing to its capital.

Recalling that it is as much the duty of the directors to distribute earnings (1929 Comp. St. § 32-156) as to abstain from distributing capital, we can see no substantial difference between the assurances found to have been made and the status created by the articles. It is possible that an attempt by the holders of common stock to reserve a part of

the earnings as working capital would have been contrary to the spirit of these assurances. But no such attempt is here in question.

Appellees also contend: "The company could have paid the contracted dividend at all times requisite therein out of its net income, without encroaching on its capital." It is true of course, that the invalidity of this amendment is not conclusive against the right of the corporation to declare dividends, or even against the right of preferred stockholders to force such declaration. It might not of itself perhaps be fatal to the judgment entered. However, appellees say themselves that, as to the ability of the corporation to pay these dividends from profits, no findings were asked and none were made. The only issue offered by the plaintiff was the invalidity of the amendment. It sought no injunction. It is plain from the record that the cross-plaintiffs did not seek, nor the court award, the relief on the ground that there were profits from which the dividend could be made. The judgment stands upon the propositions here discussed.

We conclude that the judgment is erroneous, and must be reversed. The cause will be remanded, with a direction to enter judgment granting the relief prayed for by plaintiff, and dismissing the cross-complaint.

It is so ordered.

BICKLEY, C. J., and HUDSPETH, J., concur.

PARKER and SADLER, JJ., did not participate.