(45 Misc. Rep. 484.)

### HUTCHINSON et al. v. CURTISS et al.

(Supreme Court, Special Term, New York County. November, 1904.)

1. CORPORATIONS—DIVIDENDS—NET PROFITS.

Estimated profits to be made by a manufacturing company on orders for the future delivery of goods to be made from raw material not yet purchased are not "net profits" within Stock Corporation Law, § 23 (Laws 1892, p. 1829, c. 688), and New Jersey General Corporation Law, § 30 (P. L. p. 286), both declaring that dividends shall be made only from net profits.

2. SAME—INCREASE IN BULK OF RAW MATERIAL—INVENTORY.

In determining whether the books of a malting company showed a "net profit," so as to justify the declaring of a dividend, an increase of 15 per cent. in the bulk of barley which takes place when it is manufactured into malt was properly inventoried as having the value of barley, it appearing that this was the trade custom.

3. SAME—LIABILITY OF DIRECTOR—SUBSEQUENT PROFITS.

A director who has become personally liable for the amount of dividends declared from capital in violation of Stock Corporation Law, § 23 (Laws 1892, p. 1829, c. 688), is not entitled to have his liability reduced by the amount of profits afterward made by the corporation under a different management.

4. SAME—INDIRECT LOSS—BOND ISSUE.

Under Stock Corporation Law, § 23 (Laws 1892, p. 1829, c. 688), making directors personally liable for dividends declared from any source other than net profits, there is no liability for loss of commissions, discounts, etc., on a bond issue made necessary by the declaring of dividends from capital.

Action by Archibald A. Hutchinson and others against Alexander M. Curtiss and another. Judgment for plaintiffs.

McElheny & Bennett (John A. Garver, William M. Bennett, and Victor K. McElheny, Jr., of counsel), for plaintiffs.

William N. Cohen, Thomas Thacher, Austin G. Fox, and Dean Sage, for defendant Curtiss.

Sherman Evarts (Carl A. De Gersdorff, of counsel), for defendant American Malting Co.

CLARKE, J. The American Malting Company was organized under the laws of New Jersey September 28, 1897. It began business on October 11, 1897. On October 15, 1897, it filed a copy of its charter in the office of the Secretary of the State of New York to enable it to do business in this state, and received the usual certificate for that purpose. The principal office of the company was situated in the city of New York, at No. 80 Broadway, from its organization until the fall of 1899, and since then it has been situated continuously at East river and Sixty-Third street, New York City. The company has had no plant or property in New Jersey. It has kept no bank account there.

It had merely a formal statutory office in that state. Its capital stock is $30,000,000, divided into 300,000 shares of $100 each, of which 144,400 shares of preferred stock and 145,000 shares of common stock have been issued. The preferred stock is 7 per cent. cumulative, having a preference as to dividends only. The company is engaged in the manufacture and sale of malt. Its stock was issued to promoters for 21 malting establishments, situated in various parts of the United States, on which they had acquired options, and for $2,080,000 cash working capital. No stock in trade was, however, acquired by the issue of stock. As soon as the organization was effected, the company was compelled to purchase from the vendors of the various malting plants their stocks of barley and malt, for which the company issued its obligations, amounting to upwards of $1,600,000. A little over two months after the company began business, and on December 20, 1897, the board of directors declared a dividend of 1¾ per cent. to preferred stockholders, payable January 15, 1898. This amounted to $219,450. Thereafter a dividend at the same rate was declared and made payable at each of the following dates: April 15, 1898, $219,450; July 15, 1898, $219,450; October 15, 1898, $219,450; January 15, 1899, $219,450; April 15, 1899, $252,700; July 15, 1899, $252,700; October 15, 1899, $252,700—in all $1,855,350. Barely two weeks after the payment of the dividend of October 15, 1899, and on November 2, 1899, the minutes of the board of directors disclose its serious financial condition as reported to said board, viz., its outstanding obligations amounted to $2,800,000 in notes; that the officers were unable to negotiate further temporary loans; that the company needed additional working capital, and that the board authorized the sale of $4,000,000 mortgage bonds of the company. Said bonds—6 per cent. 15-year gold mortgage bonds—were subsequently disposed of at a discount of $400,000. This is an action brought by plaintiffs as stockholders on behalf of themselves and all other stockholders similarly situated against the defendant Curtiss, as director of the company, to compel him to account for and pay to the company the amount of the dividends declared and paid as not having been paid out of the profits, but out of the capital. The board of directors having upon demand refused or neglected to bring suit in the name of the company, it was joined as a party defendant. At first the company put in a defense, but subsequently, its management having changed, it obtained leave to file an amended answer admitting the allegations of the complaint and joining in the prayer of the plaintiffs for the relief demanded. In a similar action against another of the directors the complaint was dismissed upon the trial. Upon appeal the Appellate Division reversed that judgment. Hutchinson v. Stadler, 85 App. Div. 428, 83 N. Y. Supp. 509. That case settled the law for this court to this extent: that an action could be maintained in the courts of this state against a director of a New Jersey corporation to recover the amount of dividends declared in violation of the laws of that state. Two opinions were handed down, in which the learned justices arrived at the conclusion that the action could be maintained upon different grounds. With each of these opinions a justice concurred. The fifth learned justice concurred in the result. I cite this division of opinion because this court is now called upon to apply the law as laid down with this practical embarrassment: that,

while it was the unanimous decision that the action could be maintained, yet the difference in the grounds therefor means a difference of hundreds of thousands of dollars in the judgment I am about to order. As I interpret it, that case holds this court has jurisdiction, because section 23 of the stock corporation law of this state (Laws 1892, p. 1829, c. 688) provides:

"The directors of a stock corporation shall not make dividends, except from the surplus profits arising from the business of such corporation; nor divide, withdraw or in any way pay to the stockholders, or any of them, any part of the capital of such corporation, or reduce its capital stock, except as authorized by law. In case of any violation of the provisions of this section the directors under whose administration the same may have happened, except those who may have caused their dissent therefrom to be entered at large upon the minutes of such directors at the time, or were not present when the same happened, shall jointly and severally be liable to such corporation and to the creditors thereof to the full amount of the capital of such corporation so divided, withdrawn, paid out or reduced."

And because section 30 of the general corporation law of New Jersey (P. L. p. 286) provides:

"No corporation shall make dividends, except from the surplus or net profits arising from its business, nor divide, withdraw or in any way pay to the stockholders, or any of them, any part of its capital stock, or reduce its capital stock, except according to this act, and in case of any violation of the provision of this section the directors under whose administration the same may happen shall be jointly and severally liable at any time within six years after paying such dividends to the corporation and to its creditors in the event of its dissolution or its insolvency to the full amount of the dividend made or capital stock so divided, withdrawn, paid out or reduced, with interest on the same from the time such liability accrued: provided that any director who may have been absent when the same was done, or who may have dissented from the act or resolution by which the same was done, may exonerate himself from such liability by causing his dissent to be entered at large on the minutes of the directors at the time the same was done, or forthwith after he shall have notice of the same, and by causing a true copy of said dissent to be published within two weeks after the same shall have been so entered in a newspaper published in the county where the corporation has its principal office."

And because section 60 of the stock corporation law of this state (Laws 1897, p. 314, c. 384) provides:

"Except as otherwise provided in this chapter, the officers, directors and stockholders of a foreign stock corporation transacting business in this state, except moneyed and railroad corporations, shall be liable under the provisions of this chapter in the same manner and to the same extent as the officers, directors and stockholders of a domestic corporation for: 1st. The making of unauthorized dividends. * * * Such liabilities may be enforced in the courts of this state in the same manner as similar liabilities imposed by law upon the officers, directors and stockholders of domestic corporations."

That is, by virtue of the statutes, this state allows the recovery of dividends unauthorized by the state of New Jersey from directors of a New Jersey corporation in the same manner and to the same extent as the directors of a domestic corporation. That is, it is the New Jersey statute which makes the dividend unauthorized, but the recovery is to be had according to the New York statute. What, then, is unauthorized? "No corporation shall make dividends except from the surplus or net profits arising from its business." . Net profits are defined in the Century Dictionary as "what remains as the clear gain of

any business after deducting the capital invested in the business, the expenses incurred in its management, and the losses sustained by its operation." And the controlling question of fact is, were these dividends paid from "net profits?" The 21 branches, located in many places and in different states, which were actually engaged in the business of manufacturing the malt from the barley, sent in to the general office in New York daily, weekly, and monthly statements in great detail of their business. From these statements branch books were made, and from these a general set of books was prepared. All of the books and papers from the general office, which were used in the accounting department, were produced in court, identified, and marked in evidence. The defendant objects to the summaries made up from these books and from any and all conclusions of fact to be drawn from said books and said summaries upon the ground that concededly the contracts and the contract books were not produced and were not considered. It was in evidence that malt was always oversold; that contracts for future deliveries, running over many months, were entered into, and the claim is that such contracts were required to be taken into consideration when it came to be determined whether any particular dividend was warranted or not. Such claim, in my opinion, is unfounded. The law is that "no corporation shall make dividends except from the surplus or net profits." These contracts were to deliver at a future time a product not yet made from raw material, not yet purchased, with the aid of labor not yet expended. The price agreed to be paid at that future time had to cover all the possible contingencies of the market in the meanwhile, and might show a profit, and ran the chance of showing a loss. When the sales actually took place they were entered in the books. But to calculate months in advance on the result of the future transactions, and on such calculations to declare dividends, was to base such dividends on paper profits—hoped for profits, future profits—and not upon the surplus or net profits required by law. It does not seem to me that you can "divide"—that is, make a dividend of—a hope based on an expectation of a future delivery at a favorable price of what is not yet in existence, under the statute. So the objection to the books upon that ground is of no weight. From the books certain statements were made up for the aid of the court upon different theories and in different ways. One set of statements was testified to be exactly what the books showed, without the change of a figure. These exhibits are known as "10 P," "10 Q." As to these statements I do not understand that there is any controversy as to the accuracy of the figures. A second statement, known as "10 R 10 S," is identical with the foregoing, with the elimination of one entry, which, as matter of fact, was eliminated by the company itself some months after its entry. There was entered on the books on the 31st of December, 1898, an item of $388,063.36 of the anticipated or estimated future profits on contracts for future deliveries running over many months. This entry, for the reasons stated in regard to the contracts for future deliveries, was unjustifiable. The company subsequently removed this entry. The actual transactions—that is, the deliveries of the malt called for by the contracts and the receipts in payment therefor—being reported from time to time as they occurred,

resulting in double credits, the cancellation or reversal of the entry was absolutely required. On the other hand, I find against the plaintiffs in regard to their contention as to the increase account. Barley is bought by the bushel of 48 pounds. Malt, the manufactured article made from barley by steeping, is dealt in by the bushel of 34 pounds. The process of manufacture produces about 15 per cent. more of malt by the bushel than the barley measures from which it is produced. The amount of this 15 per cent. excess is reported from each of the manufactories month by month as increase. Of course, this increase has a value, as it is sold as malt at malt prices. For the purpose of inventory the company has ascribed to it the value of the barley. This, plaintiffs claim, is error, because that amount has already once been charged to malt account, and they say this increase should have no value ascribed to it until sold and delivered, when its proceeds go into the books as cash. But it certainly is an asset of the company, and as an asset at inventory periods, or when it is necessary to ascertain the actual condition of the company, it must be valued in some way. As it has always been the custom in the malting business to treat it as treated by this company, I am unwilling to. disregard that custom. The accounts upon which I based my conclusions treated it as the company did. I find that at the time of the declaration and payment of the third dividend, July, 1898, a deficit was caused thereby of $142,774.59, and from that time to the end of the period under consideration none of the dividends were paid out of net profits, but all were paid out of capital.

But it appears that defendant, Curtiss, was not present at the meeting on February 28, 1899, when the dividend paid April 15, 1899, was authorized. Under the New York statute—under which we are proceeding—a director who was not present when the dividend was declared is not liable. The approval of the minutes at the following June meeting, at which he was present, was only the authentication of the proof of what had happened at the previous meeting. He is therefore not to be held liable for that dividend. He is liable, in my judgment, as follows: For dividends paid July 15, 1898, to the extent of $142,-774.59; October 15, 1898, $219,450; January 15, 1899, $219,450; July 15, 1899, $252,700; October 15, 1899, $252,700—$1,087,074.59, with interest thereon from the several dates of payment. As the highest court of New Jersey, interpreting the law of the state under which this company was incorporated, held, "for the full protection of the company the liability of the directors must be absolute" (Appleton v. Am. Malting Co., 54 Atl. 454), I find against the defendant upon his claim that the accrued profits of the company, made under a changed management, can be credited in his favor against his liability. It is claimed that this is a harsh law. If it were such, complaint should be made to the Legislature, and not to the court. It does not seem to me that in these days of great corporations and of combinations into one of many corporations it is asking too much of directors, fiduciary officers as they are, that they should obey the law of their incorporation and not bring their companies to the verge of bankruptcy and ruin by the payment of quarterly dividends on preferred stock out of capital instead of net earnings.

As to the second cause of action, while the allegations are profuse as to a "willful, fraudulent, and illegal conspiracy," the proof failed to establish that there was any such conspiracy for defendant's personal benefit. The cases establishing the cause of action pointed at in these allegations have been where directors have diverted to themselves for their own benefit the property of the company. The damage here flowed out of the making of the dividends, if any there was. It was alleged that the company had to issue bonds, and that the commissions, discounts, and interest thereon amount to $650,000, which, as a waste of its funds the plaintiff seeks to recover. But as I find that this flowed as a damage only from the declaration and payment of the dividends, I am persuaded by the language of Mr. Justice Hatch in Hutchinson v. Stadler, supra, that it does not, under the facts of this case, constitute a separate cause of action. He says:

"In point of fact the statute of the state of New Jersey upon this subject, as well as our own, does little more than lay down a rule of damage to be enforced against directors for breach of duty. At common law a recovery could be had for the waste, but the extent of the recovery would depend upon the damage sustained by the corporation, and be the subject of proof. The statute measures the loss sustained, which is usually the correct amount, and authorizes a recovery therefor of the individuals who produced that result."

It seems to me that any other theory would result in turning the amount recovered for illegal dividends into a penalty. The Court of Errors and Appeals of New Jersey in this very matter, as well as our Appellate Division, have held:

"The liability imposed by the statute is not penal in its character. Its sole purpose is not to punish, but to provide for the making of compensation by wrongdoers for the injury sustained by their wrongful act."

This alleged loss must therefore be held to have been included in that for which the defendant is required to make compensation by paying into the company an amount equal to the illegal dividends.

Judgment for the plaintiffs as indicated, with costs and extra allowance of $2,000. Submit findings on notice.