WESP v. MUCKLE et al.

(Supreme Court, Appellate Division, Fourth Department. January 12, 1910.)

1. CORPORATIONS (§ 310*)—OFFICERS—ILLEGAL DIVIDENDS—LIABILITY OF DIRECTORS—DEFENSES.

Under Stock Corporation Law (Consol. Laws, c. 59) § 28, providing that no distribution of corporate assets as dividends can be legally made, unless the net earnings clearly justify such a division, and that any director violating the provision shall be liable to the corporation and its creditors to the full amount of any loss sustained by them thereby, it is immaterial whether a director violating the provision knows the exact condition of the corporation; it being his duty to ascertain the true condition from the books, which the corporation is expressly required by section 32 to keep of all its business and transactions.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1362; Dec. Dig. § 310.*]

2. EVIDENCE (§ 352*) — DOCUMENTS — CORPORATE BOOKS — LIABILITY OF DIRECTORS.

In an action by a trustee of a bankrupt stock corporation against the directors to recover for dividends declared by them and paid from the capital stock, instead of from its surplus profits, the ledger of the corporation was admissible in evidence to show the financial condition of the corporation when the dividends were declared.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1398–1403; Dec. Dig. § 352.*]

3. EVIDENCE (§ 352*)—DOCUMENTARY EVIDENCE—CORPORATE BOOKS.

Corporate books are competent evidence of corporate acts.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1398–1403; Dec. Dig. § 352.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Munroe County.

Action by Emil J. Wesp, trustee in bankruptcy of the Rose Shoe Manufacturing Company, against William J. Muckle and others. Judgment for plaintiff. From an order denying a new trial, defendants appeal. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

John A. Barhite, for appellants.

Isaac Adler, for respondent.

SPRING, J. The Rose Shoe Manufacturing Company was a domestic corporation, with a capital of $25,000 common stock and $3,-900 of preferred stock, doing business in the city of Rochester, and it was adjudged a bankrupt by the United States District Court for the Western District of New York on April 20, 1907, in involuntary bankruptcy proceedings. This action was commenced by the plaintiff, as trustee of the estate of said bankrupt, against the directors of said corporation, to recover the amount of dividends declared by the defendant directors and paid from the capital stock of said corporation, instead of from its surplus profits.

In May, 1905, a dividend of 3½ per cent. on the preferred stock and 3 per cent. on the common stock, amounting to $886.50, was declared by the directors and paid. Like dividends were declared and paid in November of that year, and again in May, 1906. About November 20, 1906, like dividends were declared and ordered paid by the directors, although only the dividend payable on the preferred stock was in fact paid. These dividends were declared by the directors without any one dissenting, and were each based upon a statement presented by the secretary of the company, and who was also a director, setting forth a summary of the assets and liabilities of the company, and a copy of the statement was delivered to each director. The ledger book of the corporation was received in evidence under the objection of the defendants, and it contains a summary statement also, and which was the basis for each six-months dividend declared.

The statement showed on May 1, 1905, corporation resources of the value of $57,712.70, and liabilities aggregating $25,158.75, with a net surplus earned during the six months period ending on that date of $3,653.95. Among the resources the accounts and cash amounted in round numbers to $32,000, merchandise $3,700, plant and equipment $16,000. Each six months thereafter, as dividends were declared, a statement in like form was presented to the directors, each showing an increase in the value of the assets over the preceding statement, without any corresponding increase in liabilities, and with a decrease in the net surplus for the six-months period. On November 1, 1906, the accounts and cash were appraised in round numbers $39,000, and with the merchandise, plant, and equipment at $66,600, and the liabilities $39,500, so that apparently the outstanding accounts were adequate to meet nearly all the liabilities of the corporation. Five months later, when the corporation was adjudged to be insolvent, the total assets were appraised at $11,729, including open accounts of about $2,400, and the

trustee realized from the property $9,056, and the chief part was purchased by the defendant Muckle.

When a going manufacturing concern becomes insolvent, there is, of course, a marked depreciation in the selling value of its assets. This inevitable diminution will not account for a shrinkage of resources from $70,000 in November to about $9,000 six months later. The bills receivable at the inventoried rate were ample within a few hundred dollars to pay all the liabilities of the corporation, and when sifted out it is apparent they must have been grossly exaggerated in value or padded in the statement in order to make a showing for a dividend. There was no charge in the statement for depreciation, and items were carried along of no definite value to a company struggling to maintain a foothold and ward off insolvency. It is obvious, therefore, that during the periods when dividends were declared there must have been an impairment of capital and no surplus profits from which the dividends ordered could be paid.

The main contention of the appellants' counsel is that the account books of the corporation, particularly its ledger, were improperly received in evidence, and which were admitted for the purpose of showing the financial status of the corporation when the several declarations of dividends were made and paid. The appellant Muckle was the foreman, as well as a director, and the appellant Strasenburgh was not about the plant, except to attend the meetings of the board of directors. It is claimed that neither was a bookkeeper, and did not know of any errors in the ledger or the books. The appellants, in seeking a reversal because of the reception of this ledger, rely upon Rudd v. Robinson, 126 N. Y. 113, 26 N. E. 1046, 12 L. R. A. 473, 22 Am. St. Rep. 816. In that case an action in equity was commenced by the receiver of an insolvent corporation against the defendant, one of its directors, charging him as trustee with certain property which, it was alleged, belonged to the corporation, and which, it was claimed, he had unlawfully appropriated, and a judgment was recovered against him. The only evidence against the defendant was certain entries in the corporate books, of which he had no knowledge, and the Court of Appeals held this evidence was incompetent. The question of the status of the company was not involved. The corporate action of the directors was not in controversy. The only way in which the entries in the books would be competent to charge the defending director with conversion of the corporate property would be as an admission, and that was negatived because he knew nothing of the entries.

In the present case the action of the director in his official capacity is involved. The declaration of dividends was very carefully guarded by section 28 of the stock corporation law (Consol. Laws, c. 59), and no such distribution of corporate assets can be legally made unless the net earnings clearly justify such a division. Any director violating this salutary provision is liable to the corporation, "and to the creditors thereof to the full amount of any loss sustained by such corporation or its creditors respectively by reason of such withdrawal, division or reduction." Section 28, Stock Corporation Law. If a director present at a meeting of the board desired to be absolved from

the liability imposed by this statute, he could cause his dissent to be entered at large upon the minutes of the directors at the time. Whether the director knows the exact condition of the corporation is unimportant. It is his duty to ascertain whether the earnings authorize the withdrawal of the corporate assets to pay a dividend. If he can be excused because he did not know the condition of the corporation, the effect of the statute would be nullified.

It is the financial standing of the company which is always involved when a dividend is declared, and it is upon that standing that the vote of the directors is founded. It is a different situation where a corporation is suing a stranger or one of its members to recover an indebtedness, or charging him with holding its property. It cannot establish its debt or title to its property by an entry in the corporate books, unless the defendant assented to the entry. The crux of the litigation in this case is the financial condition of the corporation, and the books of the company disclose that condition. It is obliged by statute to keep "correct books of account of all its business and transactions." Section 32, Stock Corporation Law. It is in those books that the affairs and transactions of the company are supposed to be found.

The distinction between a case of this kind and that involved in the Rudd Case is clear, and is recognized in the opinion in that case, at page 117 of 126 N. Y., page 1046 of 26 N. E. (12 L. R. A. 473, 22 Am. St. Rep. 816), which says:

"The books of corporations for many purposes are evidence, not only as between the corporation and its members, and between members, but also as between the corporation or its members and strangers. They are received in evidence generally to prove corporate acts of a corporation, such as its incorporation, its list of stockholders, its by-laws, the formal proceedings of its board of directors, and its financial condition when its solvency comes in question."

The same distinction is illustrated in Leonard v. Faber, 52 App. Div. 495, 65 N. Y. Supp. 391, and Minor v. Crosby, 76 App. Div. 561, 78 N. Y. Supp. 594, cited on the brief of the appellants' counsel. It seems to be well settled that corporate books are competent evidence of corporate acts. Angell & Ames on Corporations (9th Ed.) §§ 635 and 679; Hubbell v. Meigs et al., 50 N. Y. 480, 492; Sigua Iron Co. v. Brown, 171 N. Y. 488, 495, et seq., 64 N. E. 194; Blake v. Griswold, 103 N. Y. 429, 434, 9 N. E. 434; Huntington v. Attrill, 118 N. Y. 365, 379, et seq., 23 N. E. 544.

Whenever a dividend was declared, the secretary gave to each director a statement purporting to be taken from the books of the company and showing its financial standing. Each director took this statement with him, and the appellant Strasenburgh testified that he had one of these statements at the time of the trial. Not one of them was offered in evidence. There is nothing to show that the entries in the books differed from the copies furnished to the directors. Presumably they were identical, and defendants, therefore, knew what the books contained. They had abundant opportunity to examine the statement each time and ascertain whether a dividend was proper. The estimation of values they assented to or did not investigate. They may have

relied upon the secretary, but it was their affirmative duty to know whether a dividend was justified before authorizing its payment.

The other errors assigned we do not deem it necessary to comment upon. The judgment and order should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur.