[Civ. No. 3133. First Appellate District, Division Two.—January 30, 1920.]

SOUTHERN CALIFORNIA HOME BUILDERS (a Corporation), Respondent, v. R. O. YOUNG et al., Appellants.

[1] CORPORATIONS — MAKING DIVIDENDS OUT OF CAPITAL — STATUTORY LIABILITY OF DIRECTORS—RIGHT OF CORPORATION TO ENFORCE.— Where the directors of a corporation make dividends out of other than surplus profits, contrary to the provisions of section 309 of the Civil Code, the right to recover upon the liability defined by that section is not limited to a recovery on behalf of the stockholders or the creditors of the corporation, but the corporation itself may maintain a suit to enforce such liability.

[2] ID.—ACTUAL DAMAGE TO CORPORATION.—Where the directors of a corporation make dividends out of other than surplus profits, contrary to the provisions of section 309 of the Civil Code, the actual damage to the corporation is the amount which its capital is depleted by the unlawful dividends.

[3] ID.—RECOVERY BY CORPORATION FROM STOCKHOLDERS—DIMINUTION OF RIGHT TO RECOVER AGAINST DIRECTORS.—The right of the corporation to recover from those to whom corporate assets may have been unlawfully transferred does not affect the statutory liability of the directors who made the unlawful distribution, unless the corporation, in the exercise of the first right, causes the replacement, in whole or in part, of what was taken from the corporation. In that event the liability of the directors would be diminished proportionately or expunged, since the corporation would be entitled to what was taken and no more.

1. Liability of directors to corporation for acts in excess of their power, note, 55 L. R. A. 758.

Liability of stockholders who receive dividends paid out of capital, notes, Ann. Cas. 1915A, 827; Ann. Cas. 1917A, 575; L. R. A. 1917C, 397.

[4] ID. — ACTION TO ENFORCE STATUTORY LIABILITY OF DIRECTORS — PARTIES—RIGHTS OF DIRECTORS AGAINST STOCKHOLDERS IMMATERIAL.—In an action by the corporation against the directors to enforce the liability of the latter for making dividends out of other than surplus profits, neither the corporation nor the court is concerned with the question of any subsequent rights of the directors to pursue the stockholders to whom such dividends were paid, they being neither necessary nor proper parties to the litigation.

[5] ID. — ACCEPTANCE OF UNLAWFUL DIVIDENDS — RATIFICATION — ESTOPPEL.—The mere acceptance by the stockholders of the dividends declared out of other than surplus profits, unaccompanied by any other fact which might present equitable considerations, will neither operate as a ratification of the wrongful act nor as an estoppel against the right of the corporation to enforce the statutory liability defined by section 309 of the Civil Code.

[6] ID.—GOOD FAITH OF DIRECTORS—WHEN A DEFENSE.—In an action by the corporation to recover upon the statutory liability of the directors for having made dividends out of other than surplus profits, good faith on the part of the directors in believing that there were surplus profits out of which such dividends could be paid does not constitute a defense. If that defense could ever be considered, it would only be where the pleadings clearly and in detail show the facts of fraud and dishonesty practiced upon the directors, and further show facts from which the conclusion would follow irresistibly that the directors could not have guarded against such fraud.

[7] ID.—SURPLUS PROFITS DEFINED.—The term "surplus profits" is the equivalent of net receipts, that is, the receipts of a business after deducting current expenses. Neither money earned as interest, however well secured, or certain to be eventually paid, nor mere advance in value of property prior to its sale, not estimated profits on partially executed contracts, constitute profits within the meaning of the statute so as to entitle the directors of a corporation to make dividends therefrom.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frank G. Finlayson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Henry K. Norton, Wilbur Bassett and Roy V. Rhodes for Appellants.

Hickcox & Crenshaw for Respondent.

BRITTAIN, J.—Five former directors of the plaintiff, a going corporation, appeal from a judgment for something

over thirty thousand dollars, the aggregate of three dividends paid during their administration, the trial court having found that none of the dividends was paid from surplus profits.

Under two broad contentions, that section 309 of the Civil Code does not permit the maintenance of such an action as this by a corporation except for the benefit of creditors, and that good faith on the part of the directors is a complete defense to such an action, numerous questions are presented. Except in one particular, to which further reference is made, counsel for respondent assumes, and, after serious consideration, the court is of the opinion, the questions are properly before it upon a sufficient record.

The facts necessary to be considered are undisputed, and, without following the details of the trial procedure, may be summarized as follows: On the demand of the defendants a jury was called to establish the value of the corporation's realty at the dates of the respective dividends. By stipulation these figures were modified, and, as so changed, were adopted by the court as a part of its findings. The court also found that at the date of each dividend the liabilities of the corporation exceeded its assets. For the sake of brevity the figures are tabulated, each dividend having been for two and one-half per cent of the par value of outstanding stock, declared and paid respectively at the dates indicated, as follows:

|  | Apr. 15, 1913. | Oct. 15, 1913. | Jan. 15, 1914. |
|---|---|---|---|
| Realty value | $311,091.00 | $334,394.00 | $327,222.00 |
| Deficit | 50,099.19 | 117,534.35 | 142,312.40 |
| Dividend | 8,958.99 | 9,635.14 | 11,492.61 |

The court further found that the defendants, at the date when each dividend was declared, had before them as directors a statement, inventory, and balance sheet, furnished by the employees of the corporation in charge of its books in the ordinary course of its business, purporting to show undistributed in the treasury and accumulated between the dates of the organization of the corporation and the particular dividend, surplus profits sufficient to pay the dividend, but that the statement, balance sheet, and inventory were not true, full, or correct statements of the financial condition of the corporation, for the reason that the property was shown at a fictitious value largely in excess of its actual value, and also because many items carried as assets

should have been carried as losses, and many carried as profits should have been carried as liabilities, and that if the statement, balance sheet, and inventory had been true and correct, they would have shown the corporation had not made surplus profits, but that there was a deficit. These findings were based on evidence taken during fifty-eight days of trial, ten of which were devoted to the determination of the value of the real property. The evidence introduced is not before the court, it being recited in the bill of exceptions that sufficient evidence was introduced to support the findings, except those not heretofore mentioned, that the corporation was damaged to the amount of the respective dividends, upon which no evidence was introduced other than the fact of their payment.

Eliminating those clauses not involved in this appeal, section 309 of the Civil Code is as follows: "The directors of corporations must not make dividends except from surplus profits arising from the business thereof, . . . nor must they divide, withdraw or pay to the stockholders or any of them, any part of the capital stock. . . . For a violation of this section, the directors under whose administration the same may have happened . . . are, in their individual or private capacity, jointly and severally liable to the corporation, and to the creditors thereof, to the full amount of the capital stock so divided, withdrawn, paid out or reduced . . . ''

[1] The appellants contend that an action cannot be maintained by the corporation to recover upon the liability defined in the section except on behalf of creditors. The language of the statute at first glance would appear to be too clear to permit an interpretation limiting the right of the corporation to recover property taken from it. A forceful argument is presented to show that such a first impression cannot be supported upon sound reason.

A similar statute was adopted in New York in 1825, in New Jersey in 1846, and in this state in 1850. It is unnecessary to consider the changes in these statutes by amendments affecting either their language or punctuation. It is contended they are but codifications of a common-law rule that the capital of a corporation is a trust fund, first for the creditors and then for the stockholders, for the misapplication of which the directors were liable as trustees.

This view seems to have been held, in 1902, by Mr. Justice Pitney, now of the supreme court of the United States, then the vice-chancellor of the court of chancery of New Jersey. In a very learned and illuminating opinion he reviewed a great number of English and American cases, and reached a conclusion upon which he sustained a demurrer to bills in consolidated suits by certain stockholders against directors of two corporations, saying, among other things: "It would be unjust and inequitable for the stockholders directly or indirectly to recover from the directors the very moneys which they have already received." (*Siegman* v. *Maloney,* 63 N. J. Eq. 422, [51 Atl. 1003].) An appeal having been taken under another name from the order made on demurrer, the court of errors and appeals reversed the ruling. In the course of the opinion, written by Mr. Chief Justice Gunmere, he said: "The apparent object of the provision is to afford protection equally to the corporation and to its creditors against loss by reason of the illegal act. But the creditors can suffer no injury from it unless the capital is so impaired as to render the company insolvent. Not so with the corporation. Any impairment of its capital is harmful to it in some degree; the seriousness of the injury depending upon the extent of the impairment. For the full protection of the company the liability of the company must be absolute. . . . In our judgment, the legislature intended by this provision to afford the full measure of protection which the words provide." Concerning the statement that it would be inequitable to permit stockholders to recover from directors money they had themselves received as dividends, it was said: "The argument assumes there will be no transfer of the stock of the company during the period of the liability of the directors. The assumption is unwarranted. The very declaration of the dividend, evidencing, as it does, the apparent prosperity of the company, creates a desire on the part of outsiders to become holders of the stock. It at the same time decreases the actual, while increasing the apparent, value of the stock. The result is to afford unscrupulous directors, and stockholders who are cognizant of the illegal action of the board, an opportunity to unload their holdings upon innocent purchasers at fraudulently inflated prices. . . . Nor is it inequitable that stockholders who have innocently

participated in the distribution of the illegal dividends should have their stock restored to its normal value by contribution from the directors who have impaired the capital without being first required to pay back the dividend so paid to them. The ordinary purchaser of corporate stock holds it as an investment. He rightly considers and treats the dividends paid upon it as income. In many instances the income is required to meet the expenses of living and is entirely expended for that purpose. To say that a person who has been unwittingly induced to exhaust his principal by the mistaken or fraudulent representation of those to whom he has entrusted it, that what has been paid to him as income suffers no injury, is absurd. To refuse him redress except upon the condition that he return the moneys which he has expended in the belief that his capital was intact, notwithstanding that by such expenditure he is rendered penniless, is to put a premium on fraud in corporate management.'' (*Appleton* v. *American Malting Co.*, 65 N. J. Eq. 375, [54 Atl. 454].) The same question coming before the court after Mr. Justice Pitney became a member of it, he wrote the opinion expressly adopting the reasoning and conclusions of the decision in *Appleton* v. *American Malting Co.* (*Siegman* v. *Eleêtric Vehicle Co.*), 72 N. J. Eq. 403, [65 Atl. 910].) The rule has been adopted by the United States circuit court in New Jersey, and by the courts of New York. (*Siegman* v. *Electric Vehicle Co.*, 140 Fed. 117; *Hutchinson* v. *Stadler,* 85 App. Div. 424, [83 N. Y. Supp. 509]; *Hutchinson* v. *Curtis,* 45 Misc. Rep. 484, [92 N. Y. Supp. 70]; *De Raismes* v. *United States Lithograph Co.,* 161 App. Div. 781, [146 N. Y. Supp. 813].) While, in all the cases, cited except the latest, the suit was brought by the stockholder instead of the corporation, neither the reason nor the rule is different when the suit is by the corporation. In this state, at least, when such a suit is brought by the stockholder it is entertained only on behalf of a corporation the officers of which fail or refuse to act, and then the corporation must be made a party. (*Cogswell* v. *Bull,* 39 Cal. 320; *Waymire* v. *San Francisco etc. Co.,* 112 Cal. 646, [44 Pac. 1086]; *Wickersham* v. *Crittenden,* 93 Cal. 17, [28 Pac. 788].)

Under numerous subheadings it is argued, in effect, either that the overruled decision first written by Mr. Justice Pitney

was correct or that the rule finally adopted by him does not apply in this case. These contentions do not appear to be well founded. They have received careful consideration, but do not require lengthy comment here. Although one of the purposes of the statute was to protect creditors, that was not its sole purpose. There is nothing in *People* v. *Savings Union*, 72 Cal. 199, [13 Pac. 498], *Moore* v. *Lent*, 81 Cal. 502, [22 Pac. 875], or *Baldwin* v. *Miller & Lux*, 152 Cal. 454, [92 Pac. 1030], which in the least degree militates against the rule, nor are the cases from other states, cited by appellants upon this subject, at variance with the rule. The statute affords protection in proper cases to the corporation, regardless of whether or not there are creditors. It would be nothing short of absurd, therefore, to hold that no suit could be maintained to enforce the liability, except one on behalf of stockholders. (*Kohl* v. *Lilienthal*, 81 Cal. 387, [6 L. R. A. 520, 20 Pac. 401, 22 Pac. 689].) The cases of *Winchester* v. *Mabury*, 122 Cal. 522, [55 Pac. 393], and *Moss* v. *Smith*, 171 Cal. 777, [155 Pac. 90], when read in connection with the facts upon which they were based, lend no support to the contentions of the appellants.

[2] The appellants argue that, while the statute is highly penal in its effect upon directors, and is, therefore, to be strictly construed, its purpose is not punitive but remedial, and that in such cases as this actual damage must be shown. For the present purpose both of these propositions may be accepted, but unless the seemingly unanswerable logic of Mr. Chief Justice Gunmere in *Appleton* v. *American Malting Co., supra*, is set at naught, the actual damage to the corporation is the amount by which its capital is depleted by the unlawful dividends. The liability to the corporation is direct, not secondary only because of its inability to pay creditors. The decision of *Winchester* v. *Howard*, 136 Cal. 432, [89 Am. St. Rep. 153, 64 Pac. 692, 69 Pac. 77], does not support any other view of the meaning of the unambiguous language of the statute.

[3] The right of the corporation to recover from those to whom corporate assets may have been unlawfully transferred does not affect the statutory liability of the directors who made the unlawful distribution, unless the corporation, in the exercise of the first right, causes the replacement, in whole or in part, of what was taken from the corporation.

In that event the liability of the directors would be diminished proportionately or expunged, since the corporation would be entitled to what was taken and no more. The same reasoning would apply to recoupment by assessment upon the stock while it remained in the hands of those who had received the unlawful distribution, and if other equities, suggested in the opinion in *Appleton* v. *American Malting Co., supra,* had not intervened, if, indeed, an assessment for such restoration could lawfully be levied. One purpose of section 309 of the Civil Code was to assure existing and incoming stockholders of the corporation that its capital should not be wrongly depleted. If, in violation of the statute, directors should make a dividend from capital instead of from profits, and, before suit, should themselves replace an equivalent sum in the treasury, or should, by an appeal to those who had received the money, cause them to replace it, the corporation, of course, could not, by such a suit as this, exact double payment. If the stockholders or some of them resisted such an appeal, and an assessment, assuming such an assessment to be otherwise legally unobjectionable, were levied and paid, the result would be the same as if the same stockholders voluntarily had returned the money they had received.

It is stipulated in the present case that after the dividends in question were paid, the corporation received from its stockholders in payment of assessments levied by its board of directors a sum of money greater than the aggregate of the dividends. To say the least, it is extremely doubtful whether an assessment levied for the purpose of replacing assets wrongfully diverted could be upheld under the provisions of the code prescribing that assessments may be levied for the purposes of paying expenses, conducting business or paying debts. (Civ. Code, sec. 331.) If it were levied in terms for any other purpose than recoupment, it would be evasive and fraudulent, if that were its real purpose. In this case the stipulation furnishes no aid to the appellants. It does not show when nor for what purposes the assessments were levied. The trial occupied fifty-eight days, all but ten of which were devoted to the examination of the financial affairs of the corporation. The evidence adduced is not before the court. Under the rule that every reasonable inference must be drawn in support

of the action of the trial court, it may be assumed that the evidence showed the assessments were levied, not for the purpose of recoupment, but for other specific purposes to which the money, when paid, was properly applied.

Argument upon the proposition that such a suit cannot be maintained on behalf of the stockholders is answered by the fact that this suit was brought by the corporation on its own behalf to recover for injury sustained by it. [4] Equally immaterial is the argument concerning the right of the directors to pursue stockholders to whom payments were made in the event of a final judgment in this suit against the directors. If the corporation is entitled to a judgment in this statutory suit, neither the corporation nor the court is concerned with the question of any subsequent rights which the defendants may assert against persons who are neither necessary nor proper parties to the present litigation.

[5] In their fourth special defense the defendants attempted to plead an estoppel against both the corporation and the stockholders who participated in the dividends in question. No special facts were alleged except that the stockholders had accepted dividends and had not complained. Mere consent or silence on the part of stockholders, unaccompanied by any other fact which might present equitable considerations, will neither operate as a ratification nor as an estoppel. (*Kohl* v. *Lilienthal*, 81 Cal. 385, [6 L. R. A. 520, 22 Pac. 689]; *Kreamer* v. *Earl*, 91 Cal. 112, [27 Pac. 735]; *Tapscott* v. *Mexico Colorado etc. Co.*, 153 Cal. 667, [96 Pac. 271]; *Burne* v. *Lee*, 156 Cal. 228, [104 Pac. 438]; *Hedges* v. *Frink*, 174 Cal. 553, [163 Pac. 884].) The general demurrer was properly sustained to the special defense as pleaded, and the record does not show that the appellants sought to amend, either when the ruling was made or after the evidence was before the court. In the absence of the evidence which was introduced, this court cannot assume that it supported the appellants' claims of estoppel. Neither in the present state of the pleadings would any part of the excluded evidence have been admissible upon an issue of estoppel not before the court.

That there is nothing inherently inequitable in such a suit appears both from the sound reasoning upon which the

decision in *Appleton* v. *American Malting Co., supra,* is based, and from the express provisions of section 309 of the Civil Code, establishing the directors' liability. If the facts of the particular case showed it would be inequitable to enforce the liability, those facts should have been presented in the record filed in this court. As a matter of law, upon the appellants' first broad contention, it is concluded that the liability of directors for the amount of unlawful dividends distributed by them is a direct one to the corporation and not dependent upon the existence of corporation creditors.

[6] The appellants' other main contention is that: "No recovery can be had against directors who after due care and investigation, and in the *bona fide* belief that the corporation had sufficient surplus for the purpose, paid dividends ratably among the stockholders."

In their second separate defense the appellants alleged that at the time of declaring each dividend as directors they had before them a statement, inventory, and balance sheet, furnished them by employees of the corporation in charge of its books and accounts in the ordinary course of business, showing that between the date of the organization of the corporation and the date of the dividend there had been accumulated and undistributed in the treasury sufficient surplus profits out of which to pay the dividends, respectively, and that the defendants relied upon the entries appearing in the statement, inventory, and balance sheet and believed the same to be true, and, upon information and belief, they alleged that the same were true and accurate statements of the financial condition of the corporation. General demurrer to this defense was overruled, but a similar demurrer to the third separate defense was sustained, in which defense it was alleged the appellants, in good faith and in honest belief that the corporation had surplus profits arising from its business from which the dividends respectively could properly and lawfully be made, voted therefor; that each dividend was paid without intent to delay, hinder, or defraud any creditor; that the defendants exercised due diligence to ascertain the financial situation of the corporation and to determine whether there were sufficient surplus profits arising from the business from which to pay the dividend, and each dividend was paid in

the honest belief that the financial situation of the corporation was such that the amount of surplus profits arising from the business then belonging to the corporation was greater than the amount of the dividend. While no direct attack is made by the appellants upon the demurrer ruling, there appears in the respondent's brief a statement made by the trial judge in sustaining the demurrer to this defense, in which, after stating the reasons for the conclusion, the trial judge said: ''All the foregoing considerations lead me to the conclusion that the defense of good faith, attempted to be alleged in the third separate defense, is not a defense, for these reasons the demurrer thereto will be sustained.'' While neither the second nor the third defense was pleaded with the particularity of statement which might have been required by special demurrer, it appears from what has been said that the question of good faith was presented by the second defense, although not so strongly as by the third defense. In relation to the second defense the court found that the directors had before them the statement, inventory, and balance sheet, as alleged in the second defense, further finding that the same were false, and that the assets were shown therein to be of a value very largely in excess of their actual value, with items carried as assets which should have been carried as losses, and items carried as profits which should have been carried as liabilities. There was no direct finding on the question of good faith, no doubt because of the demurrer ruling.

In support of the issue of good faith each of the defendants offered to testify that as directors they had relied upon the entries appearing on the statements, inventories, and balance sheets, and believed them to be true, accurate, and correct statements of the financial condition of the corporation, and that when declaring the dividends they acted in good faith and in the honest belief that the corporation had sufficient surplus profits to pay the dividends; that they had exercised reasonable care and diligence to ascertain the financial condition of the corporation. They further offered to prove that they had caused the books of the corporation to be audited by a certified public accountant, that said audit showed a net undivided surplus sufficient to pay at least one of the dividends, and the report of the audit was offered. They further offered to

prove by an attorney that they had consulted him in regard to the payment of the dividends and had been advised by him that they were lawful and proper. They offered to prove that they had caused the real property to be appraised by certain bank officials, bank appraisers, railroad land agents, and residents in the neighborhood of the properties; that the defendants believed that the persons named as appraisers were the best qualified persons then available for the purpose of making appraisement, and that in good faith they had believed in and relied upon the rectitude of the appraisements, which were also offered in evidence. All this evidence was rejected upon the general objection that it was immaterial, as, indeed, it was if the ruling of the trial judge that good faith is not a defense to such an action was correct. The question presented in the first instance, therefore, is one of law as to whether or not under the circumstances the defense of good faith may be interposed to defeat the liability declared by the statute, although that question is brought here upon the rulings of the court in refusing to admit the proffered evidence.

It is apparent this is not a case within the purview of section 4½ of article VI of the constitution. That section was adopted to prevent reversal of just judgments for technical errors of procedure. (*People* v. *O'Bryan*, 165 Cal. 64, [130 Pac. 1042].) It did not modify or lessen the substantial guaranties of life, liberty, or property, without which any government must be despotic. Those guaranties depend on what has been said to be the right controlling all rights —the right of every person to be heard in ordinary forms of law in his own defense. The appellants contend that by the action of the trial court they were deprived of their right to present evidence which, if true, would have exonerated them. If the defense was permissible in the particular case, the refusal to receive evidence in its support constituted a miscarriage of justice of such a character as to be outside of the operation of the constitutional provision.

Although the provisions embodied in section 309 of the Civil Code have been in force in this state since 1850, it is remarkable that this exact question does not appear to have been judicially determined by the supreme court. It has always been presumed that directors have knowledge

of the business of corporations it is their duty to manage and control. Before the adoption of any of the statutes in terms making directors liable, among other things, for declaring dividends out of capital, it was recognized both in the courts of common law and in the courts of equity that directors as trustees were liable for acts of malfeasance or misfeasance by which the capital of the corporation might be improperly depleted. Directors may still be liable under the old rules in cases other than those provided for in section 309 of the Civil Code, if they have been grossly negligent in the employment of the corporation servants, or in their oversight of them in the management of the corporate business. In such cases the questions of good faith, care, and diligence are the essential ones to be determined.

The appellants argue that section 309 of the Civil Code is only a codification of the old rules. The court has been unable to accept this view. The adoption of the statute was not intended as an idle act. It does not appear reasonable to suppose that if the legislature merely intended to codify the pre-existing common law, it would have passed the statute apparently limiting the liability of the directors to three particular acts for which they might be held liable as trustees. In the growth of corporate intervention in ordinary business affairs, it is inconceivable that by the adoption of these statutes the legislatures of a number of states intended to lessen the responsibility of directors by declaring them liable for specific breaches of trust, which by their mention in the statute might have the effect of relieving the directors from civil liability for other breaches not mentioned. In discussing the first general contention of the appellants, decisions of the supreme court of this state have been cited, from which, generally speaking, it appears that the prohibition of section 309 of the Civil Code against withdrawing capital or declaring dividends from capital has been denounced as contrary to the policy of the law, and *ultra vires*.

The appellants rely strongly upon a decision in a case arising under a similar statute of Illinois. The opinion was written by Judge Grosscup of the United States circuit court of appeals. The opinion shows that in the particular case the corporation was under the control of a group of men who perpetrated upon it, its directors, stockholders, and

creditors,· a series of grossly fraudulent and actively dishonest practices. In the course of the opinion Judge Grosscup said: ''The whole question of liability in these respects seems to center around the inquiry, Should the appellees, in the exercise of the diligence required of them by law, have known, at the time of the transactions, the true state of the company's affairs?'' In that case he applied the reasoning and the rules of the common law to the statute. (*Chick* v. *Fuller,* 114 Fed. 22, 28, [51 C. C. A. 648].) This case stands practically alone, and the ·significant feature of it is the showing of direct fraud practiced not by, but on, the directors.

Under the first contention of the appellants they relied upon the reasoning of Mr. Justice Pitney in a case in which his decision was reversed by the court of errors and appeals of New Jersey. It has been stated that when Mr. Justice Pitney became a member of that court in a subsequent case he adopted the reasoning of the overruling opinion. Upon the present contention probably no stronger statement can be found than that of Mr. Justice Pitney in the later case. He said: ''Under the statutory scheme it is manifest that while it is a function of the directors of a corporation to determine whether net earnings or surplus exist applicable to the payment of dividends, they cannot, by an erroneous determination of this point, confer either upon themselves or upon the corporation powers that by the corporation act are withheld, nor make lawful that which the act has prohibited. If this were permissible, then by the same logic a court that is called upon to pass on the question of its jurisdiction over a given subject matter might, by an erroneous determination, enlarge its jurisdiction. Some matters that are *ultra vires* the directors may be *intra vires* the corporation; some matters that are *ultra vires* the corporation may be so simply because they are unauthorized; other matters may be *ultra vires* the corporation because prohibited by law. The matter we are dealing with comes within the latter category. Not only is it not within the express or implied powers of a corporation to distribute its capital among the stockholders in the guise of dividends as from profits, but the doing of this is expressly and with emphasis prohibited. In *Appleton* v. *American Malting Co.,* 65 N. J. Eq. 375, [54 Atl. 454], this court pointed out that the im-

pairment of capital resulting from unlawful payment of dividends not only renders the corporation less able to conduct its business and to meet its obligations, but tends to the injury of innocent investors by decreasing the actual while increasing the apparent value of the stock, and likewise to the injury of the very stockholders who innocently participate in the distribution, because they are led to treat dividends as income and expend them as such, while in truth they are unwittingly exhausting their principal." (*Siegman* v. *Electric Vehicle Co.*, 72 N. J. Eq. 408, [65 Atl. 912].) The question of the same dividends came before the United States circuit court. In the course of the opinion it was said: "A board of directors have no legal power to declare dividends and direct their payment when they know, or ought to know, that the payment will result in impairing the capital fund of their corporation." (*Siegman* v. *Electric Vehicle Co.*, 140 Fed. 117, 119.)

Under a similar statute considered by the appellate division of the New York supreme court it said: "Whether the director knows the exact condition of the corporation is unimportant. It is his duty to ascertain whether the earnings authorize the withdrawal of the corporate assets to pay a dividend. If he can be excused because he did not know the condition of the corporation, the effect of the statute would be nullified. . . . Whenever a dividend was declared the secretary gave to each director a statement purporting to be taken from the books of the company and showing the financial standing. . . . They had abundant opportunity to examine the statement each time and ascertain whether a dividend was proper. The estimation of values they assented to or did not investigate. They may have relied upon the secretary, but it was their affirmative duty to know whether a dividend was justified before authorizing its payment." (*Wesp* v. *Muckle*, 136 App. Div. 241, [120 N. Y. Supp. 976, 979, 980]; affirmed in *Wesp* v. *Strasenburg*, 201 N. Y. 527, [94 N. E. 1100].)

[7] "Surplus profits" has been defined as "the excess of receipts over expenditures; that is, net earnings" (*Connolly* v. *Davidson*, 15 Minn. 519, [2 Am. Rep. 154]); "the receipts of a business, deducting current expenses; it is equivalent to net receipts." (*Eyster* v. *Centennial Board of Finance*, 94 U. S. 500, [24 L. Ed. 188, see, also, Rose's

U. S. Notes].) ''Net earnings are properly the gross receipts, less the expense of operating the road or other business of the corporation. . . . When all liabilities are paid either out of the gross receipts or net earnings, the remainder is the profit of the shareholders.'' (*St. John* v. *Erie R. R. Co.*, 10 Blatchf. 270, [Fed. Cas. No. 12,226].) ''Under these definitions it is not easy to comprehend how profits or surplus profits can consist of earnings never yet received. The term imports an excess of receipts over expenditures, and without receipts there cannot properly be said to be profits. Money earned as interest, however well secured, or certain to be eventually paid, cannot in fact be distributed as dividends to stockholders, and does not constitute surplus profits within the meaning of the statute. To hold the contrary would, we think, tend to open the door to a practice under which the assets of corporations would be liable to distribution as dividends, upon no surer basis than the judgment of their debtors as to the value of their bills receivable. Such is not, and should not be, the policy of the law.'' (*People* v. *Savings Union*, 72 Cal. 203, [13 Pac. 498].) Mere advance in value of property prior to its sale, or estimated profits on partially executed contracts do not constitute profits, because the fluctuations of the market and the uncertainty of the completion of such contracts may bring about a condition such as was found to exist in the present case, where the estimated profits were in fact liabilities or direct losses. (*Gray* v. *Darlington*, 15 Wall. 63–65, [21 L. Ed. 45, see, also, Rose's U. S. Notes]; *Jennery* v. *Olmstead*, 36 Hun, 536–538.)

The admitted facts shown by the record now before the court that the deficit between the liabilities and the assets of the corporation grew from fifty thousand dollars at the time of the first dividend to one hundred and seventeen thousand dollars at the time of the second dividend and to over one hundred and forty-two thousand dollars at the time of the third dividend, and that at the time of the third dividend the corporation had realty known to have been of the value of three hundred and twenty-seven thousand dollars, or, in other words, that at the time of the third dividend there must have been liabilities of about four hundred and seventy thousand dollars at least, render it almost inconceivable that the directors of the corporation could have

been deceived by a mere statement and balance sheet. It is equally inconceivable that they could have relied upon any mere appraisement that the realty of the corporation was worth practically half a million dollars over its real value. It will be noted that there was no offer to show there had been any sales of property at values largely in excess of the cost of the property to the corporation; there was no offer to show that the corporation had received from actual business carried on excessively large sums of money from many transactions, the nature of which the directors could not in the exercise of ordinary care have known all about. Mere estimates of increased value of property known do not constitute profits. Upon the record presented to this court none of the exceptional circumstances shown in *Chick* v. *Fuller, supra,* appear.

To hold that in every suit to recover the statutory liability, directors may be exonerated by merely testifying they were mistaken and they believed that there were surplus profits, because they had accepted the figures of a balance sheet prepared by the corporate employees, would open the door to the grossest frauds in corporate management. This court can reach no conclusion other than that reached by the highest courts of New York and New Jersey. As a general rule, good faith on the part of the directors in declaring dividends from capital instead of from surplus profits is not a defense in a suit to recover the statutory liability. If that defense could ever be considered, it would only be where the pleadings clearly and in detail show the facts of fraud and dishonesty practiced upon the directors, and further show facts from which the conclusion would follow irresistibly that the directors could not have guarded against such fraud. No such exceptional circumstances appear in the present case. The conceded facts found from the evidence taken during fifty-eight trial days are of such a character that in the absence of the evidence from the record, and on the meager pleadings and offers of evidence, this court is of the opinion that the rejection of the evidence relied on by the appellants was not erroneous.

The judgment is affirmed.

Langdon, P. J., and Nourse, J., concurred.