## GILLEAN v. BENNETT, TARLTON & CO.
### (No. 6651.)

(Court of Civil Appeals of Texas.   Nov. 28, 1923.   Rehearing Denied Jan. 26, 1924.)   ·

1. **Appeal and error ⚌171(3)—Position on appeal must be consistent with pleadings.**

Appellant cannot, on appeal, assume a position inconsistent with his pleadings in trial court, especially where such pleadings are admitted by the adverse party to be true.

2. **Partnership ⚌86—Sum placed on firm's books at end of year, as estimated profits in cotton contracts to be executed in future, held not "net profits."**

A sum placed on firm's books at end of fiscal year, as estimated profits in cotton contracts to be carried out in future, which item was speculative because value of such ' contracts was dependent upon future cotton market, *held* not "net profits" from the business during the year within plaintiff's contract for 10 per cent. of net profits; net profits being defined as what remains as the clear gains of any business after deducting capital invested therein, the expenses incurred in its management, and losses sustained by its operation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Net Profits.]

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Suit by W. O. Gillean against Bennett, Tarlton & Company. From an adverse judgment, plaintiff appeals. Affirmed.

J. Harris Gardner and White, Wilcox, Graves & Taylor, all of Austin, for appellant.

Hart & Patterson, of Austin, for appellees.

BAUGH, J. Appellant sued appellees in the district court of Travis county, for the sum of $6,579.54, with interest, alleging same to be a balance due him under a contract with appellees, whereby he was to receive 10 per cent. of the net profits of the business of the firm for the year ending July 31, 1919. Under the contract in question, appellant and appellees were associated from August 1, 1917, to July 31, 1919, in the business of buying and selling cotton, at which latter time their relations were severed. It is not contended that such dissolution was wrongful. Appellant had been with appellees in said business for a number of years as a salaried employee, and, under the new contract men-

tioned above, the salaries of the respective members of the firm were fixed, and appellant was to have a 10 per cent. share in the profits of the business. The judgment of the trial court, which was based upon the findings of the jury on special issues, involved several items, but only one item, $5,296.70, is involved in this appeal; that being 10 per cent. of the estimated value on July 31, 1919, of certain cotton contracts which were to be fulfilled in the future. According to estimates made at that time, the firm had a profit in these contracts of $62,650. The jury found that the contracts, when fulfilled and as handled by the firm in the exercise of due care, resulted in actual loss to the firm of $31,502.01. This loss is not disputed by the appellant, nor does he charge any negligence or wrongful conduct of appellees in the fulfillment of said contracts.

## Opinion.

[1] The proof raised some question as to whether the status of appellant, under the contract, was that of a partner or merely an employee. The determination of this point is not necessary in disposing of this case, as the result would be the same in either event. However, the appellant in his pleadings alleged a partnership, the appellees in their answer admitted a partnership relation, and the case was tried under the assumption by all parties that it was a partnership. This does not necessarily constitute the relation a partnership, but we think the appellant cannot, on appeal, assume a position inconsistent with his pleadings in the trial court, especially where such pleadings are admitted by the adverse party to be true. Payne v. Hardesty (Ky.) 14 S. W. 348; Gill v. First Nat. Bank (Tex. Civ. App.) 47 S. W. 751; 31 Cyc. 87; 38 Cyc. 1327.

[2] The sole issue for us to determine, as we see it, in this case is this: Was the $62,500 placed by appellees on their books on July 31, 1919, the time when appellant's connection with the firm ceased, as estimated profits in cotton contracts to be carried out in the future, net profits from the firm's business during the year 1918–19, under the terms of appellant's contract? We think it was not. Net profits have been defined as—

"What remains as the clear gain of any business after deducting the capital invested in the business, the expenses incurred in its management, and the losses sustained by its operation." Hutchinson v. Curtis, 92 N. Y. S. 70, 72, 45 Misc. Rep. 484.

It is not contended by appellant that these cotton contracts had a market value, or a fixed value, or that they were negotiable. On the other hand one of appellees testified to the contrary. It is not denied that the item of $62,500 was entirely speculative, and the value of such contracts estimated on the basis of the then existing cotton prices.

Their value, or the profits that might accrue upon their fulfillment, depended upon the future cotton market. This market fluctuated and might increase or decrease such estimated gains, or incur a loss to appellees. All of these contingencies were well known to appellant. It is not disputed that these very contracts did incur a heavy loss. Tooey v. Percival Co., 192 Iowa, 267, 182 N. W. 403, was a case somewhat similar to the one before us. In that case, at the time of the termination of the partnership contract, there were outstanding contracts for sales and outstanding contracts for purchases of goods that were completed after such termination, and plaintiff claimed the estimated profits on such contracts. In that case the court said:

"The principles of the science of bookkeeping restrict the net profits of any business to such profits as have been reduced to actual possession, in the form of cash or its equivalent, by completed sales. In other words, the difference between the cost price and the market price of unsold goods does not constitute a profit in a going concern, except in a speculative sense."

It has also been held that notes, which certainly have a much more fixed value than contracts for the future delivery of cotton, cannot be considered as profits until actually collected. Crawford v. Calkins, 170 Mich. 587, 136 N. W. 369; First Nat. Bank v. Rush (Tex. Com. App.) 210 S. W. 521, 527. Clearly the question of whether these cotton contracts were to be a loss or a gain to the company could not be ascertained until they were performed. This the appellant knew at the time his relation with the firm was severed, and we see no grounds either in law or in equity which would entitle him to recover an estimated profit which was entirely speculative, and which in fact turned out to be a loss instead.

It appears to have been a part of the firm's system of bookkeeping to estimate, on July 31st of each year, the profits or losses it then had in future contracts, and to place same on the books either as assets or liabilities; then in the ensuing year, when such contracts were fulfilled, to either charge or credit such past year's business with the actual outturn of these contracts. When appellant came into the firm, on August 1, 1917, the books of the concern showed an estimated profit in future contracts then on hand of $28,500, credited to the year of 1916–17, but charged against the year 1917–18, in which latter year appellant was a member of the firm and entitled to participate in the profits, but not of the former year. Appellant insists that, having adopted that method of conducting its business, the firm recognized these estimates as fixed values at the end of each year's business, and that same became a definite fixed charge against the ensuing year's business,

whether such estimated profits were ever realized or not. We do not think so. The testimony shows that, even as to the item of $28,500 on the books as estimated profits when appellant came into the firm, a separate account was kept, and that this item, credited to the previous year's business, was in fact taken care of out of profits made from the future contracts on hand when he joined the firm, and in which he was not entitled to share. Appellant was thoroughly familiar with this method of doing business. He knew the speculative nature of these estimated profits, and that such were "book profits" only, and that whether or not they in fact existed must ultimately be determined by the fulfillment of the contracts themselves. It appears that none of the profits in which he was entitled to share after he became a member of the firm were taken to care for previous estimates, so appellant could not have been either misled or injured by the method complained of. Not having waived or surrendered his rights to participate in the outcome of the future cotton contracts on hand when he left the firm on August 1, 1919, and which were undisputedly a part of the 1918–19 business, the matter of any profit to him therein, like that of appellees, depended upon whether or not any profit was in fact made upon their fulfillment. None was made, so we are of the opinion that the judgment of the trial court against him on this item was correct, and it is affirmed.

### On Motion for Rehearing.

Appellant insists that this court erred in its findings that the $28,500 item charged against the 1917–18 business was taken care of out of profits made from the future contracts of 1916–17, on hand when appellant joined the firm, and in which he was not entitled to share, and that he could not have been misled or injured. He calls our attention, on this point, to the auditor's statement taken from appellees' books, introduced in evidence. It is true that this statement shows that this item was paid out of the business of 1917–18, while Gillean was a member of the firm. But this statement lumps together the "credits" of that year's business, and does not show whether the profits derived from the 1916–17 contracts were included therein or not. It seems that the books themselves were not put in evidence, but only the auditor's report summarized therefrom. Mr. G. R. Bennett, senior member of the firm, testified on this point as follows:

"With reference to starting the year's business the 1st of August, 1917, with certain items charged on the books as having gone over from the year before, the 1916–17 books were kept open until all matters pertaining to the 1916–

17 business were heard from and closed up; they did not go into the business that Mr. Gillean was interested in. There were two sets of books kept, the one showing the previous business being kept until that previous business was concluded. The books of the 1916–17 business, before Mr. Gillean went in, were kept open and all items pertaining to that business were kept in those books, to keep from mixing them up with the business in which Mr. Gillean was interested and the amounts on the books were credited to the members of the partnership as it existed before Mr. Gillean went in."

This testimony clearly sustains our findings of which appellant complains.

There appears to be a slight discrepancy, called to our attention by appellant, between our statement of the nature of the suit and the allegations of plaintiff's petition, but this we deem wholly immaterial, as it in no way affects the undisputed issue in the case. It is not necessary, therefore, to restate the case. We have carefully considered appellant's motion, but must adhere to our opinion in the case.

His motion is therefore overruled.

Overruled.